OLE JACOBSON, Appellee, v. UNITED STATES GYPSUM CO., Appellant.

**Master and servant:** NEGLIGENCE: FACT QUESTIONS. Where the evidence in a personal injury action is conflicting upon the question of whether the master's foreman knew the danger to which plaintiff would be exposed in performing a service, and whether the plaintiff was ignorant thereof, the issues are for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. In this action for injury to a servant while employed in assisting to remove a smoke box the evidence of contributory negligence is held to present a question for the jury.

**Same:** DAMAGES: INTEREST: INSTRUCTIONS. It is the general rule that a personal injury does not create a debt, and that it does not become one until it is judicially ascertained and determined. The court, however, may compute interest on a verdict embracing damages accrued at a specified time with interest thereon, and include the same in the judgment; but interest should not be allowed the plaintiff in such an action on a verdict for damages which had not fully accrued to him until the time of trial, or upon an award embracing future damages, such as pain and suffering, and an instruction authorizing the same is erroneous.

*Appeal from Webster District Court.—Hon. C. G. Lee, Judge.*

WEDNESDAY, MARCH 8, 1911.

ACTION at law to recover damages for personal injuries received by plaintiff while in defendant's employ as a servant or employee.   Trial to a jury.   Verdict and judgment for plaintiff, and defendant appeals.—*Modified* and *affirmed.*

*B. J. Price* and *Clark & Hutchinson,* for appellant.

*W. T. Chantland* and *Kelleher & O'Connor,* for appellee.

DEEMER, J.—This is the second time the case has been before us.   The opinion on the first appeal will be found in 144 Iowa, 1.   That opinion, whether right or wrong, made the law of the case, and it should be adhered to on this appeal.

Most of the questions presented on this appeal were considered in the former opinion, although the record contains some new propositions arising upon the second trial which were not involved in the former appeal.   (1) It is argued that there was no negligence on the part of the defendant; (2) That plaintiff assumed the risk incident to his employment; (3) that he was injured by the act of a fellow servant; and (4) that he was guilty of contributory negligence.   Again, it is contended that the court erred in one of its instructions, that the jury erred in allowing interest on the amount of damages awarded plaintiff, and that the trial court should have set aside the verdict or corrected or reduced it upon defendant's motion.

Recurring now to these propositions in the order stated, it is apparent that the trial court submitted the case to

the jury upon the theory outlined when the case was before us on the former appeal. Indeed, no complaint is made of the instructions in this respect. The following quotations from the charge of the court will indicate the theory upon which the case was submitted:

(6) It is the duty of the master to use reasonable care to warn and apprise the servant of any new or unexpected or unseen danger which may be known to the master and which is unknown to the servant, if he has reasonable ground to believe the same is unknown to the servant, and the same can not be ascertained by the servant in the exercise of ordinary prudence. If the master sends the servant into a place of danger, which danger is not known or apparent, open, or obvious to the servant, then the servant has a right to rely and believe, in the absence of knowledge to the contrary, that the master is sending him into a safe place, and he is not required, in the exercise of ordinary care, to go out of his way to search for hidden dangers or to inquire of the master as to its safety. If you believe from a preponderance of the evidence that when the plaintiff left the smoke box described in the evidence, and went below to perform other duties, a portion of the rivets holding the parts of said smoke box together were uncut, and that such remaining rivets were cut during his absence and without his knowledge, thus rendering the box unsafe to bear plaintiff's weight thereon, and the said foreman, Wurtsmith, knowing that plaintiff was ignorant of the fact that said rivets had been cut, or having reasonable grounds for believing him ignorant thereof, sent him to perform a task which required him to intrust himself upon the box in question, without warning him of the danger which he would thus encounter, and plaintiff, acting as a reasonably prudent man under the circumstances, obeyed the order and was injured by the falling of the box, then you will find that defendant was negligent.

(8) If you believe from the evidence that defendant's foreman, Wurtsmith, told plaintiff to go up and adjust the rope without warning him of the danger of getting upon said smoke box in its then condition, yet the plaintiff can not recover unless you further find that the said Wurtsmith knew that plaintiff did not know that all the rivets

had been cut, or had reasonable ground for believing that plaintiff did not know such fact.  Or if you believe from the evidence that the smoke box in question fell because of pressure applied by plaintiff in such a way as to tend to push the smoke box off of the bracket upon which it was resting, as he was pulling on the hook attached to the rope suspended from the beam above, in an effort to pull the hook down to attach it to the rope plaintiff had adjusted on the smoke box, and you further believe that such source of danger was as open to the observation and knowledge of plaintiff as it was to defendant, then plaintiff can not recover.

(10) One of the defenses urged by the defendant in this case is that the injury which plaintiff claims to have sustained was occasioned by the negligence of a fellow servant.  You are instructed that if such defense is true that plaintiff can not recover.  On this point the law is that, if a foreman is engaged in the work of superintending, then his negligence while so engaged whereby an inferior servant is injured will be the negligence of the master; but if notwithstanding his office of foreman he is engaged in the common work with the other servants, and while in that capacity an injury results to another servant from his want of ordinary care, such an injury would be one inflicted by one fellow servant upon another, and the master would not be liable.  On the other hand, if the foreman, exercising the power conferred upon him by the master, sends a man who is working under his orders to a dangerous place to work or puts him at dangerous work, this will be the act of the master, and not the act of the fellow servant, because it is not the act of mere service with the other, but is an act of authority which can only be exercised by virtue of an office of vice principal for the master for whose acts the master is liable.  In this case if you find that, while Wurtsmith and Jacobson were engaged together in the same work, the injury was inflicted upon Jacobson by reason of something which he and Wurtsmith were doing together, they would be fellow servants, and plaintiff could not recover.  On the other hand, if at the time plaintiff was injured you find that Wurtsmith, as superintendent or boss, did negligently send or order Jacobson to perform the work of adjusting the hitch upon the smoke

box, the danger of which was known to Wurtsmith but not known to Jacobson, and the said Wurtsmith did not have reasonable grounds to believe the same were known to plaintiff, .then such negligence, if any, would be the negligence of defendant, and not the negligence of a fellow servant.

(12) In this case, if you find from the evidence that plaintiff was in as good a situation to know and appreciate the dangers involved in the work he was doing as was the defendant, and he continued in the work without any objection or protest, then and in that event he assumed the risk arising from doing the work in the way and under the conditions in which it was being done at the time of the accident. Or, if you find from the evidence that at the time plaintiff went upon the smoke box the last time to readjust the rope he either knew or by the exercise of ordinary care could have known that Wurtsmith had cut all the rivets, then and in that event he assumed all the risk incident to going upon the smoke box and readjusting the rope after all the rivets were cut.

(13) Where the servant is engaged in work the very nature of which contemplates the rendering of the place where he is working unsafe, then he assumes the hazard arising from the unsafety resulting as an incident of the work undertaken. While the master is not bound to guard the servant against perils naturally resulting from the very work being performed, he is bound not to enhance those perils by any act or omission of his own. If he is present in person or by his foreman assuming charge and direction of the work and the conduct of the employees, and by his own negligent act or direction creates a new or increased danger which is unknown to the servant, and which otherwise would not have attended the servant's employment, the servant does not assume the risk of injury from such source. In determining what the plaintiff did know and appreciate, or should have known and appreciated and the danger confronting him, and in determining what Wurtsmith did know, or as a reasonably prudent man should have known or believed, you should consider all the facts and circumstances surrounding the parties as disclosed by the evidence.

These instructions very clearly and concisely state the case as announced in the former opinion of this court, and defendant does not in fact challenge them except by saying that parts of the first opinion are mere dictum and that defendant was not in fact negligent; that whatever negligence there may have been was the act of a fellow servant; and that in any event plaintiff was guilty of contributory negligence as a matter of law. These contentions are all answered in the former opinion, and the only real question now before us is whether or not there was enough testimony to take the case to the jury upon the issues as explained in the instructions.

The negligence charged against Wurtsmith, if any, was not the negligence of a fellow servant. This is apparent from the rule announced in the former opinion,

1. MASTER AND SERVANT: negligence: fact questions.

and the only relevant question of fact here is, was there enough testimony to take the case to the jury upon the theory that Wurtsmith, knowing of plaintiff's ignorance of the peril or having reason to believe him ignorant thereof, ordered him, plaintiff, to perform a task without warning him of the dangers which he would encounter? An answer to this depends, first, upon whether or not Wurtsmith knew of the peril; and, second, upon plaintiff's knowledge thereof. Upon these propositions there was a dispute in the testimony and the final conclusion was for the jury.

Again, Wurtsmith admitted on the witness stand that he knew it was a dangerous thing which plaintiff undertook to do, and for that reason he did not order plaintiff to do

2. SAME: contributory negligence: evidence.

it. Upon this latter point, there is a distinct conflict in the testimony which the jury was required to settle. Again, upon the question of contributory negligence, plaintiff testified: "When Wurtsmith came down there and said what he did about going up to readjust the sling, I didn't think he was ready to lower the box at that time. I wouldn't have gone up

if I had thought the box was ready to be lowered." Again he testified as follows: "I did not know any other way to do the work. I climbed up on top of the box from the middle kettle, and then went over to T. When I went up there, I could not see whether or not the rivets were cut all around the smoke box at R. It was too dark and too far away, and I could not see the bottom of the box anyway. When I was waiting down on the ground for Wurtsmith when he was hammering up there, I could not see whether or not the rivets were cut in the smoke box at the place where he was working. When I went up on top of the box to change the hitching, I was standing looking at Wurtsmith and another man down below. They were standing over at the end of the rope—one on each side of it. I could not do anything until they loosened the rope below. When I was doing this work, I did not know that any of the rivets were cut. Wurtsmith did not tell me that they were cut." Under such a state of facts the question of plaintiff's contributory negligence was for the jury. *Gibson v. Railroad*, 107 Iowa, 596; *Steele v. Grahl Co.*, 135 Iowa, 418; *Pierson v. Railroad Co.*, 127 Iowa, 13.

II. The trial court gave the following instruction: "(15) If you find for the plaintiff in this case, you will allow him such a reasonable amount as will actually compensate him in dollars and cents, as near as you can determine the same from the evidence, for the time lost by him by reason of the injury, if any, and for the actual injury to his person, including the decreased earning capacity, if any, and for the pain and suffering already endured by him, if any, and for such pain and suffering as it is reasonably certain from the evidence will be endured by him in the future, if any, and for the reasonable value of the medical services rendered for him on account of such injury, if any. Upon the amount so found, if any, you will compute

3. SAME: damages: interest: instructions.

interest at the rate of six percent per annum from the 12th day of October, 1905, and said amount with such interest will be the amount of your verdict."

Responding to this, the jury returned the following verdict: "We, the jury, find for the plaintiff, and assess the amount of his recovery against the defendant at $ one thousand with interest at six percent from Oct. 12th, 1905."

Upon this verdict the trial court rendered judgment against defendant in the sum of $1,248.50. Thereupon defendant filed the following motion:

Comes now the defendant, and moves the court to correct the judgment heretofore entered in this cause on the following grounds:

(1) The verdict of the jury rendered in the above-entitled cause was for the sum of one dollar ($1.00) only, and the judgment rendered is therefore excessive and should be reduced to said sum of one dollar ($1.00).

(2) Subject to the foregoing, this defendant shows to the court that the judgment as rendered includes interest on the sum of one thousand dollars ($1,000.00) and from the date of the alleged injury suffered by plaintiff, and that to the extent of such interest the said judgment is excessive. That interest can not be allowed on an unliquidated claim for damages on account of personal injuries prior to the finding of the amount of said damages by the jury, and the judgment should therefore be reduced by the amount of said interest so erroneously included therein.

The first part of the motion is not seriously relied upon at this time, but it is strenuously insisted that the court erred in giving the instruction quoted insofar as said instruction directed the jury to allow interest, erred in computing interest and including it in the judgment, and improperly refused to reduce the judgment to the sum of $1,000. In this connection it should be stated that October 12, 1905, is the day plaintiff received his injuries. That a trial court may compute interest on such a verdict and include it in the judgment is well settled.

*Minot v. Boston,* 201 Mass. 10 (86 N. E. 783, 25 L. R. A. (N. S.) 311), and note; *Stevens v. Campbell,* 6 Iowa, 538; *Helphrey v. Railroad,* 29 Iowa, 480.

So that we have to consider in this connection the correctness of the instruction with reference to interest and the other related proposition, Did the trial court err in refusing to reduce the judgment to the sum of $1,000? This all depends upon whether interest may be allowed upon an unliquidated claim for damages. The court gave the following additional instruction with reference to damages: "(16) If you find under the evidence and these instructions that the plaintiff is entitled to recover, and you further find that plaintiff will continue to suffer pain, and to some extent be incapacitated from performing labor in the future, in determining the length of time in the future that plaintiff will so suffer pain or be to some extent incapacitated, you must take into consideration all the facts and circumstances shown by the evidence bearing upon that proposition, including the present physical condition of plaintiff and the probable effect that his present condition will have upon the duration of his life." A reading of the two instructions shows that the jury was authorized to consider plaintiff's loss of time, decreased earning power down to the time of trial, pain and suffering already endured, or to be endured in the future, and the value of medical services rendered, and also directed the jury that it might allow something for future inability to perform labor, and then arbitrarily stated that upon the amount so found interest should be allowed from the time of injury to the date of trial. Manifestly this instruction is erroneous, in that it directed the allowance of interest upon damages which did not fully accrue to him until the time of trial and upon awards which the jury was presently to make for future damages, such interest to run from the date of the injury. In *Collins v. Coal Co.,* 140 Iowa, 114, it is said: "It is the settled law in this state that interest

may be allowed on unliquidated claims wherever it appears that the damage was complete at a particular time, and in such cases it is right to instruct that interest may be allowed." And in *Richmond v. Dubuque R. R.,* 33 Iowa, 422, the court said: "But while we decline to apply the rule of the case cited, and allow interest *eo nomine,* we are of the opinion that interest may be considered as an element of damage under the rule which permits its allowance in order to arrive at the sum which will be a just and lawful compensation for the injury sustained."

The general rule, however, that a personal injury never creates a debt, and does not become one until it is judicially ascertained and determined, has never been departed from by this court, and, if this be true, it was erroneous for the trial court to tell the jury to allow interest *eo nomine* upon the amount of damages awarded in a personal injury suit. See *Louisville Co. v. Wallace,* 91 Tenn. 35 (17 S. W. 882, 14 L. R. A. 548); *Ratteree v. Chapman,* 79 Ga. 574 (4 S. E. 684); *Lester v. Highland Co.,* 27 Utah, 470 (76 Pac. 341, 101 Am. St. Rep., 988); *Richmond v. Railroad, supra.* From the *Wallace* case we quote the following: "The measure of damages being thus fixed, it is expected that in determining it juries and courts will make the sum given in gross a fair and just compensation, and one in full of the amount proper to be given when rendered, whether soon or late after the injury, as, if given soon, it looks to continuing suffering and disability, just as, when given late, it includes that of the past. It is obvious that damages could not be given for pain and suffering and disability experienced on the very day of the trial, and then interest added for years before." In all the cases cited by appellee plaintiff's damages were complete at a given time. In such cases interest may be allowed. But where, as here, the damages were continuing and incomplete, it is manifestly improper to compute them as of a given date, and then instruct the jury to allow interest

on this computation for something over four years in the past. This, as will be readily observed, would amount to double damages. The trial court should have reduced the verdict to the amount found by the jury, to wit, $1,000, and disallowed the interest. This cures the error in the instruction, and saves a new trial. If it were possible to say that the jury allowed the interest as a part of the damages, we might perhaps affirm the allowance. But there is no ground for this inference in the light of the instruction quoted. The interest was allowed as such, and not as a part of the damages actually suffered.

This modification should not carry all the costs to the appellee. Indeed, we think an order that appellee pay one-fifth of the costs of this appeal will be an equitable apportionment. The result is that the judgment should be reduced to the sum of $1,000, and, as so reduced, that it be *affirmed*.