H. S. BRIDENSTINE, Administrator, Appellee, v. IOWA CITY ELECTRIC RAILWAY COMPANY, Appellant.

**LIMITATION OF ACTIONS:** Computation of Period—Amendment
1  Amplifying Claim. No new cause of action is pleaded by amendments which accomplish nothing more than unnecessarily pointing out the statute which is the basis of the action.

**STATUTES:** Pleading—Non-Necessity to Plead. No necessity
2  exists to specifically mention or point out the domestic statute on which plaintiff bases his alleged cause of action.

**NEGLIGENCE:** Contributory Negligence—Travelers and Street
3  Cars—Relative Rights and Duties. Relative rights and duties of travelers and those operating street cars, in approaching obscure crossings, discussed, and evidence held to present a jury question on the issue of the contributory negligence of the deceased.

**NEGLIGENCE:** Contributory Negligence—Street Cars at Crossings—
4·  Permissible Presumptions. Travelers have a perfect right to assume that street cars, on approaching a public crossing, will be operated with reasonable care and with due regard for the rights of others rightfully upon the street.

**NEGLIGENCE:** Contributory Negligence—Avoidance—''Last Clear
5  Chance.'' Two persons may be so contemporaneously negligent that, if such negligence continues unbroken, no recovery may be had for a resulting injury to one of the parties; but if one of the parties actually discovers the other party in his position of reasonably manifest danger, at a time when the one discovering can avoid the injury by the exercise of reasonable

care, such discovery presents to the one discovering, the last clear opportunity to avoid the injury, and if he does not, from the time of such discovery, exercise such reasonable care, and thereby avoid such injury, he is guilty of a *new, independent and proximate* negligence—a negligence which neutralizes the former or continuing negligence of the one injured.

NEGLIGENCE: Acts Constituting Negligence—Street Railways—Intersecting Crossings—Unallowable Assumption. Principle recognized that one in charge of a street car may not assume that a traveler will wait for the car to pass, unless the car is so close to the crossing, or its rate of speed is so apparent, that the traveler cannot reasonably expect to pass over the street in safety.

NEGLIGENCE: Imputed Negligence—Non-Common Enterprise. The doctrine of "imputed" negligence does not apply when nothing more appears than the naked fact that the injured party was, at the time of the injury, *riding with and in the conveyance of another.*

DEATH: Damages—Death of Woman—Elements of Damage. Expert evidence of the money value of a woman as a wife or mother or both, is not only not necessary, but is of trifling value when introduced. The more proper basis for the assessment of such damages is to show, *inter alia,* her capacity, ability and efficiency in the discharge of her duties as wife and mother, along with her age, life expectancy and health.

DEATH: Damages—Interest—When Allowable. Interest is allowable on unliquidated claims whenever it appears that the damages were complete at a particular time. So held in case of damages for injury resulting in death.

TRIAL: Verdict—Amendment by Court. Verdicts may properly be amended by the court by the addition of interest, such addition being a mere matter of mathematical calculation.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

DECEMBER 11, 1917.

ACTION at law to recover damages on account of the death of plaintiff's intestate. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Henry Negus* and *A. E. Maine,* for appellant.

*S. K. Stevenson* and *Messer, Clearman & Olsen,* for appellee.

WEAVER, J.—The petition alleges that, on December 11, 1911, while the deceased, Rachel W. Springmire, was lawfully riding in a carriage on Bloomington Street in Iowa City, and in the exercise of due care on her part, and while crossing the defendant's track at the point where Bloomington Street intersects with Dubuque Street, one of defendant's street cars, operated by defendant's servants, was negligently caused to collide with her carriage, throwing the deceased out upon the ground, and inflicting upon her fatal injuries. The negligence charged is alleged to consist in the operation of the car at an unlawful, careless and imprudent rate of speed, in failing to give any signal of the car's approach to the crossing, in failing to have a competent and skilled motorman in charge of the car, and in failing to have the same equipped with sand, and in failing to use proper care to discover the peril of the deceased in time to prevent the collision.

1. LIMITATION OF ACTIONS: computation of period: amendment amplifying claim.

Answering the petition, the defendant denies the same generally, and further pleads that Rachel W. Springmire was, at the time of her decease, a married woman, having no separate or independent business or employment, and was engaged solely in her domestic and family duties as a house-wife and mother.

In the original petition, the plaintiff had claimed damages in the sum of $10,000, but thereafter, on November 24, 1914, he amended his claim by reducing it to $6,000, which sum he says is recoverable under the provisions of Chapter 163 of the Acts of the Thirty-fourth General Assembly. To this amendment defendant demurred, as stating a new and

different cause of action than was alleged in the original petition, and as being barred by the statute of limitations. The demurrer was overruled and defendant answered, denying the petition as amended. It is also pleaded that the deceased, at the time of the accident, was riding with her son, engaged with him in the pursuit of a common purpose or undertaking; that the son was intoxicated; and that, while they were so engaged in this common purpose, and by reason of their failure to exercise due care, and without any negligence on the part of defendant, the collision was occasioned.

The issues thus joined were tried to a jury, which returned a verdict for the plaintiff for $2,500, and judgment was rendered thereon for such amount, with interest at six per cent from that date. Defendant's motion in arrest and for a new trial was overruled. Four days after the entry of judgment, plaintiff filed a motion pointing out that the judgment as entered provided for interest from the date of its entry only, and asking that such entry be amended to include in the recovery interest computed from the date of the decease of the intestate. This motion was sustained, and the amount of the judgment was increased from $2,500 to $3,101.42.

I. We shall confine our attention to the alleged errors which have been argued on behalf of the appellant. The first of these is based upon the overruling of the defendant's demurrer to the amendment to the petition.

The assignment of error is without merit. It was not necessary for plaintiff to specially plead the statute of the thirty-fourth general assembly, in order to have the benefit of its provisions. The cause of action stated in the original petition is the alleged death of the intestate by reason of defendant's negligence, and this cause of action is in no manner withdrawn or changed in the petition as amended, and the plea of the statute of limitations was properly over-

2. STATUTES: pleading: non-necessity to plead.

ruled.  If it requires any authority in support of a proposition so clear and evident on the face of the record, see *Cahill v. Illinois Cent. R. Co.,* 137 Iowa 577; *Gordon v. Chicago, R. I. & P. R. Co.,* 129 Iowa 747; *Benson v. City of Ottumwa,* 143 Iowa 349, 351; *Knight v. Moline, E. M. & W. R. Co.,* 160 Iowa 160; *Basham v. Chicago G. W. R. Co.,* 178 Iowa 998.

II.  It is the position of appellant that the deceased was guilty of contributory negligence as a matter of law, in that she appears not only to have been wanting in the exercise of due care for her own safety, but that it also appears that her son, who was driving the carriage, was also negligent, and that his negligence is in law imputable to her.

As has already been mentioned, the collision occurred on the crossing of Bloomington and Dubuque Streets.  The car track is laid along the surface of Dubuque Street, which extends north and south, and the carriage in which deceased rode was moving east on Bloomington.  The car in question was coming from the south northward, and down grade. The two streets at the point of crossing are depressed below the general or natural surface of the ground.

3. NEGLIGENCE: contributory negligence: travelers and street cars: relative rights and duties.

An inspection of the exhibits in evidence indicates that the elevation of the lot or block at the southeast corner of the intersection, together with well grown shade trees planted upon the block and along the street lines, obscures to a material degree the view of Dubuque Street to a person approaching on Bloomington from the west, and we think it cannot be said that such person is, under all circumstances, to be conclusively charged with negligence if he or she approaches the intersection without discovering a street car coasting rapidly down the grade from the south, before reaching a point which commands a clear view in that direction.  Much less can it be said, as a matter of

law, that the deceased or her son was in duty bound to stop at any given distance from the track and ascertain whether a car was coming. They were in the rightful use of the street. Their right therein was of equal degree with that of the defendant to operate its cars thereon. Each was required to keep reasonable outlook to avoid collision, and if it was reasonably apparent that to go ahead was to invite danger of collision, it was the duty of the driver of the carriage to yield the way. On the other hand, it was the duty of the driver of the car to be watchful to know that a crossing over which he was about to pass was clear; and if he saw, or in the exercise of reasonable care ought to have seen, that a traveler on the street was using or was about to use said crossing, and that a collision was threatened, it was his duty to use every reasonable means at his command to stop his car, or to so reduce his speed as to prevent it. It is also his duty, in approaching a blind or obscure crossing, where his view of the intersecting street is obstructed, to have his car under such reasonable control that he may stop it or reduce its speed, if any emergency requires this to be done. Whether defendant's motorman did use reasonable care in these respects, and, on the other hand, whether the intestate and her son were negligent with respect to their own safety, we are well satisfied were questions for the jury. The evidence of defendant's neglect was abundant. The motorman, as a witness, admits that he knew that the bank prevented his seeing a team approaching on Bloomington Street. Another motorman testified that they had strict orders from the defendant to operate the cars at high speed up Dubuque Street to the crest of the grade south of this crossing, and then throw off the power and coast, in order to save power, and that, when coasting, the car is ordinarily moving at from 18 to 20 miles per hour. The defendant's president says that the cars are geared to make a speed of 24 miles an hour. He

further says that, when given nine points of power, the car, when well started, is going 24 miles an hour; and the motorman admits that, when he passed over the crest and threw off the power, it was under a pressure of nine points, and that the grade was sufficient so that "the car kept picking up speed as it went down."

One can hardly imagine a more efficient death trap than would be furnished by sending a car at this excessive speed over a crossing so obscured by banks or trees or other obstruction as to conceal the approach of a team coming out of the depression or cut of a cross street. The traveler upon the street could not be held to anticipate such misuse of the railway's right in the street; and, even if the deceased or her son saw the car coming from the south, they could not be held, as a matter of law, to know that it was coming at such a speed as to threaten a collision on the crossing. The trial court did not err in refusing to hold that the deceased was conclusively shown to have been guilty of contributory negligence.

*4. NEGLIGENCE: contributory negligence: street cars at crossings: permissible presumptions.*

Some of the authorities cited by the appellant on this feature of the case are those in which the injured person was a trespasser, and have no application to facts like those now under consideration; and none of the precedents relied upon are inconsistent with our holding in this respect.

III. It is next objected that the doctrine of the last fair chance has no application to this case. Such is not our view of the situation. Even if it conclusively appeared (as it does not) that deceased or her son approached the crossing carelessly or negligently, the jury might well find that the motorman, had he been in the exercise of reasonable care, could have prevented the collision. He himself says that, as soon as he saw the carriage, he knew there was danger of collision and tried to stop,

*5. NEGLIGENCE: contributory negligence: avoidance: "last clear chance."*

but could not—a failure which the jury could properly infer was due to the fact that he had thrown off the power and was recklessly shooting down the grade without having his car under reasonable control. It does not appear that the deceased or her son, after discovering their danger, could have avoided injury. To get up the necessary speed to avoid collision by crossing the track, or to stop their team and to back away from the track, would, in the very nature of the situation, have required at least several seconds of time, and the jury could well find that there was no negligence in their failing so to do in time to escape injury. Counsel have given considerable attention to an exposition of the law of "the last clear chance." It is probably true that there is some confusion in the cases in stating the terms of the rule, but we need not here attempt any restatement of the principle.. It was very thoroughly considered and clearly defined in *Bruggeman v. Illinois Cent. R. Co.*, 147 Iowa 187, and *Wilson v. Illinois Cent. R. Co.*, 150 Iowa 33, 39. The case at bar is well within the scope of the rule as there defined. Even if it be conceded, as argued by counsel, that the motorman was unable to stop the car, this would not necessarily relieve the defendant of the charge of negligence if the failure of the motorman to control the car was due to the fact that he was handicapped in his effort by the result of his own carelessness in attaining such high rate of speed. Neither is it any answer to say that the motorman operating a street car has a right to presume that a driver of a vehicle will not attempt to cross a street car track in front of an approaching car. That proposition is true under some circumstances, and in others it is not. If it were to be approved as broadly as stated by counsel, it would be destructive of the public right in every street upon or across which a railway track is laid. The motorman has no right to assume

**6. NEGLIGENCE: acts constituting negligence: street railways: intersecting crossings: unallowable assumption.**

that the traveler will wait for the car to pass, unless the car is so near the crossing or its rate of speed is so apparent that the traveler cannot reasonably expect to pass over the track in safety. See *Lundien v. Fort Dodge, D. M. & S. R. Co.*, 166 Iowa 85; *Long v. Ottumwa R. & L. Co.*, 162 Iowa 11, 19; *Hollgren v. Des Moines City R. Co.*, 174 Iowa 568; *Watson v. Boone Elec. Co.*, 163 Iowa 316, 321; *Dow v. Des Moines City R. Co.*, 148 Iowa 429, 442.

IV. Counsel further argue that the deceased was, of her own will, riding in a carriage driven by an intoxicated man, and that she is, therefore, chargeable with contributory negligence.

Whatever may have been her measure of responsibility had there been any substantial evidence that her son was in a condition of intoxication at the time of the collision, we need not take time to decide; for there is no testimony to sustain a finding that he was in fact intoxicated. True, he admits having taken one or two drinks while in the city on that day. No one undertakes to say that he was in fact drunk, or unable to exercise the care and prudence of the ordinary person. The question argued is not presented by the record.

V. Exception is taken to the court's charge to the jury that the negligence of William Springmire, if any, is not imputable to the deceased.

**7. NEGLIGENCE: imputed negligence: non-common enterprise.**

There is no evidence that William Springmire was in the employ of the deceased on the day of the accident, or was acting under her direction or subject to her orders. The team he was driving did not belong to her, and there is no evidence that they were engaged in any common enterprise or in the transaction of any joint or common business. The most we can infer from the facts

shown is that each had some errand in town, and that the mother availed herself of the opportunity afforded to ride to town with her son. Whatever may have been the rule of earlier years, the doctrine of imputed negligence has only a very restricted application in this state. *Fisher v. Ellston*, 174 Iowa 364; *Lawrence v. City*, 172 Iowa 320; *McBride v. Des Moines City R. Co.*, 134 Iowa 398, 407; *Withey v. Fowler Co.*, 164 Iowa 377, 393. Adopting the rule of law to be drawn from the foregoing cases, it must be said that the instruction given by the court was correct.

VI. The amount of the verdict is complained of as being clearly excessive. The

8. DEATH: damages: death of woman: elements of damage.

statute, as it stood at the time of the accident, limited the recoverable damages for wrong resulting in the death of a woman to $6,000, though, by subsequent enactment, the limit has been raised to $15,000. In justice to the legislature, we should say that, its increased appreciation of the value of woman having been evidenced before the entry of our country into the world conflict now raging, its credit for the later enactment is not to be minimized by attributing it to the general inflation of war prices. It is to be noted, however, in the same connection, that our lawmaking power has not yet placed any limit upon the damages which may be recovered for wrong resulting in the death of a *man*.

The elements of damage recoverable by or on account of a woman for personal injury are stated in the statute (Section 3477-a, Code Supplement, 1913, and Code Supplemental Supplement, 1915) to be loss of time, expense for medical attendance and other expenses incurred as a result thereof, "in addition to any elements of damage recoverable by common law; and if such injury result in causing death, her administrator may sue and recover for her estate, the value of her services as a wife or mother or both in such sum as the jury may deem proportionate * * * in addition

to such damages as are recoverable by common law." It will be observed that the language clearly suggests that the amount of the recovery in such cases is peculiarly within the impartial discretion of the jury, enlightened, of course, by fair consideration of all the evidence tending to show the condition, capacity, ability and efficiency of the deceased in the discharge of her domestic duties, not only as a laborer performing menial service, but also as the housewife and head and administrator of the internal affairs of her home. In the very nature of things, it is impracticable to obtain any very adequate or accurate estimate of the value of such a life in terms of weekly, monthly or yearly wages, such as might be applied in the case of one who is neither more nor less than a hired servant. The services of a competent wife or mother cannot be weighed in the scales of the money changer. And indeed it would seem almost frivolous to call witnesses to estimate their monetary value. The best that can be done is to prove the facts and circumstances of the woman's life and service in these capacities, her age, health and strength, her expectancy of life, and all that may appear to enlighten the minds and aid the judgment of the jurors, and leave them to assess such recovery within the statutory limit as they find and believe to be just. It is, of course, within the province of the court to control the verdict if it shall clearly appear to have been influenced by passion or prejudice; but, in the absence of such abuse of the jury's discretion, its finding ought not to and will not be disturbed. There are losses and pain and suffering resulting from the wrongful acts of another for which no equivalent in terms of money can be expressed by any witness, however expert or wise, and in such cases the assessment is left to the jury under the instructions of the court, as the nearest practicable approach to a reasonable and just conclusion. *Chapman v. Pfaar,* 153 Iowa 20; *Hall v. Chicago, B. & Q. R. Co.,* 145 Iowa 291,

294; *Scurlock v. City of Boone,* 142 Iowa 684; *Lamb v. City of Cedar Rapids,* 108 Iowa 629; *Platt v. City of Ottumwa,* 136 Iowa 221; *Larkin v. Chicago G. W. R. Co.,* 118 Iowa 652. The evidence tends to show that the deceased was a married woman about 64 years of age, the mother of several children, a good and efficient housekeeper, active and serviceable, both indoors and on the farm, and a woman of more than ordinary business ability. Several of her neighbors, men and women who were heads of families, testified to their knowledge of the value of the services of a wife and mother, under the circumstances shown, and estimate its worth at $75 to $100 per month; one appreciative husband saying, "The services of any good wife are worth $100 per month." No testimony on the subject was offered for the defense.

While, for reasons suggested, we would not be inclined to place high value upon this class of testimony, it was introduced without objection or exception on the part of the defense, and the jury was entitled to consider it. The amount of the verdict is not so great as to indicate passion or prejudice on the part of the jury, and it must be allowed to stand.

VII. The one debatable question presented by the record is upon the exception taken to the action of the trial court in allowing interest upon the amount of the verdict from the date of the death of the deceased. There is an old and general rule to the effect that interest is not recoverable upon an unliquidated demand until it has been reduced to judgment. To this, however, we have come to recognize certain exceptions. One such exception has been stated to be that "interest may be allowable on unliquidated claims wherever it appears that the damage was complete at a particular time, and in such cases it is right to in-

9. DEATH: damages: interest: when allowable.

struct that interest may be allowed." *Collins v. Gleason Coal Co.*, 140 Iowa 114, 124. See also *Black v. Minneapolis & St. L. R. Co.*, 122 Iowa 32; *Hollingsworth v. Des Moines & St. L. R. Co.*, 63 Iowa 443, 447; *Johnson v. Chicago & N. W. R. Co.*, 77 Iowa 666; *Chapman v. Chicago & N. W. R. Co.*, 26 Wis. 295, 304.

It is true, the law in respect to what is called unliquidated damages has been considerably modified in many jurisdictions, and it is not difficult to find apparently inconsistent precedents on the subject. The cases above mentioned, and others to which we shall refer, have settled the proposition for this state that, in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun, interest is recoverable even though the damage is of an unliquidated character. The statement of the rule makes it clearly applicable to an action to recover damages for a death due to a defendant's negligence. There the injury and the resulting damage are complete, and the obligation of the defendant to pay is perfect at the instant of the death; and where payment is resisted, and the obligation is denied until the case has been prosecuted to final judgment, after the lapse of months or perhaps years, an allowance of interest is quite essential to the accomplishment of full justice. That actions of this character are not to be excluded from the benefit of this modification of the ancient rule is quite well demonstrated by reference to our decision in *Jacobson v. United States Gypsum Co.*, 150 Iowa 330, which was an action for damages for personal injury to the plaintiff. The recovery of damages was there modified by striking out the allowance of interest, not because interest is not allowable in any case of that character, but because plaintiff had sued and recovered on the theory of damages continuing down to the day of trial and for future pain and suffering, and the court had so charged the jury that interest on

the entire sum might be computed from the date of the injury down to the time of rendering the verdict. This was manifestly erroneous. But in the same connection, we there said:

"In all the cases cited by appellee, plaintiff's damages were complete at a given time. In such cases interest may be allowed. But where, as here, the damages are continuing and incomplete, it is manifestly improper to compute them as of a given date and then instruct the jury to allow interest on this computation for something over four years in the past."

It follows that plaintiff was entitled to 10. TRIAL: verdict: amendment by court. interest on the damages allowed, and, as the court had omitted any instruction to the jury on that subject, it did not err in correcting the verdict and judgment by adding interest to the amount of the damages assessed by the jury.

There is no reversible error in the record, and the judgment of the trial court is—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.