237 So.2d 690 (1970)
Vernetta E. TAYLOR, Wife of/and Orie E. Taylor
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO. and George P. Richards
v.
Curtis Brooks LYONS, Jr., Payton Jackson, Jr., Payton Jackson, Sr., and Orie E. Taylor.
Nos. 4047, 4048.
Court of Appeal of Louisiana, Fourth Circuit.
July 6, 1970.
Joseph Accardo, Jr., Chaisson, Accardo & Morel, Luling, for plaintiffs-appellants.
*691 Felicien P. Lozes of Drury, Lozes & Curry, New Orleans, for defendant-appellant, Allstate Ins. Co.
Brierre & Malone, New Orleans, for defendants-appellees, State Farm Mutual Automobile Ins. Co. and George R. Richards.
Before REDMANN, BARNETTE and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This litigation arises out of a vehicular accident which occurred on March 30, 1968, at about 7:25 p. m., on an overpass located one-half mile north of New Orleans International Airport on U. S. Highway 61. Plaintiffs Orie Taylor and his wife, Vernetta Taylor were proceeding south on the overpass in their 1964 Oldsmobile when they were involved in a collision with a 1966 Ford owned and being driven by George Richards in a northerly direction. Immediately prior to his collision with the Taylor vehicle, Richards had been involved in a collision with a 1964 Pontiac driven in a northerly direction by Curtis Lyons and owned by Payton Jackson, Jr., who was a passenger in the Pontiac. Two separate law suits, which were consolidated for trial and have remained so on appeal, resulted from these events. In the first of these the Taylors sued George Richards, his liability insurer, State Farm Mutual Automobile Insurance Company; Curtis Brooks Lyons, Jr., Payton Jackson, Jr., and Payton Jackson, Sr., all three of whom were uninsured; and Allstate Insurance Company, their own uninsured motorist insurer. Richards filed the second suit against Curtis Brooks Lyons, Jr., Payton Jackson, Jr., Payton Jackson, Sr., and Orie Taylor. Allstate Insurance Company filed a third-party petition against all of its co-defendants alleging that in the event it should pay the Taylor plaintiffs because of its uninsured motorist coverage of them, it would be subrogated to their rights against the other defendants. State Farm Mutual Automobile Insurance Company and George Richards also filed a third-party petition against Curtis Lyons, Jr., Payton Jackson, Jr., and Payton Jackson, Sr., seeking contribution from them as joint tortfeasors should State Farm be found liable to the Taylors. After a trial on the merits, the trial judge decided the negligence of Curtis Brooks Lyons, Jr., to have been the sole cause of the accident. Accordingly he rendered judgment in favor of the Taylors against Allstate Insurance Company to the limits of its uninsured motorist coverage and against Lyons individually for the judgment excess; in favor of State Farm Mutual for the sum it had paid Richards under its uninsured motorist coverage against Lyons; and dismissing all claims against State Farm Mutual, George Richards, Payton Jackson, Jr., and Payton Jackson, Sr. The Taylors and Allstate Insurance Company appealed that judgment to this court and State Farm Mutual and George Richards answered the appeal of the Taylors asking that the judgment be affirmed. Lyons neither appealed nor answered any appeal.
Beyond the facts set out above the record discloses a controversy as to whether Richards or Lyons caused the initial impact between their two automobiles, sending both out of control. Richards testified that he was stopped in the right lane at a red traffic signal a short distance from the overpass when the Lyons vehicle came up alongside of him in the left north-bound lane and stopped. He states that the Lyons automobile was "wobbling" as it approached the light. His version has both automobiles leaving the traffic light at the same time and running together at some forty-five miles per hour until reaching the base of the overpass. At that point Richards says he heard the roar of what sounded like a high powered engine and he looked to his left to see the front wheels of the Lyons automobile rising slightly above the pavement. This he said happened approximately at the location of a small hump on the roadway. He thought that it was then that Lyons lost control of his vehicle and crossed into Richards' lane striking *692 his vehicle, and causing Richards to lose control also. Beyond this, Richards could remember nothing clearly about the occurrence of the accident.
Lyons' version was that he slowed down for the traffic light of which Richards spoke, but did not stop due to its changing to green as he approached it. He testified that he passed the Richards automobile at the light and was ahead of it until it crossed into his lane of travel and struck his rear right fender causing him to lose control. The blow, he said, caused him to spin around and strike the right railing of the bridge or overpass. He was corroborated in his version by the testimony of Payton Jackson, Jr., owner of the automobile Lyons was driving, and passenger in the back seat thereof at the time of the accident.
The only disinterested witness who testified was the state trooper who investigated the accident. He stated that there were 169 feet of skid marks left by the Lyons vehicle before it struck the railing and that the vehicle traveled another 150 feet before coming to rest. These skid marks gradually drifted from the left lane of travel, where Lyons started out, into the right lane, which is the one Richards was traveling in. The marks left by the right tires were much heavier than those made by the left tires. The trooper further observed blue paint matching that of the Lyons' vehicle on the left side of the Richards automobile. The location of the three vehicles after the accident was described by the trooper as having the Taylor automobile against the railing in the southbound lanes, the Richards automobile in the southbound lanes also, but perpendicular to the railing, and the Lyons automobile in the northbound lane also perpendicular to the railing. It is quite clear from his testimony, and apparently undisputed, that it was the Richards automobile which collided with that of the Taylors. The trooper also testified that the odor of alcohol was present on Lyons' breath, although both Lyons and Jackson denied that there had been any drinking. There was also some testimony by the trooper regarding what he was told by witnesses at the scene of the accident which was admitted into evidence as being part of the res gestae. While there is some doubt in our minds regarding the propriety of receiving this hearsay evidence, we need not reach that question as there is sufficient evidence without that testimony to support the findings of the trial judge.
The issue presented as to negligence is strictly one of fact dependent on the credibility of the witnesses. There were two divergent versions presented to the trial judge and he could elect to believe either one or the other, parts of both, or neither. His opinion was that the Richards version was substantially correct and lacking manifest error we may not substitute our judgment for his own. Coleman v. Brook, La.App., 227 So.2d 262; Sandel v. Travelers Insurance Company, La.App., 225 So.2d 736.
The injuries and treatment of the Taylors were as follows:
Mr. Orie Taylor was admitted to the emergency room of Ochsner Foundation Hospital following the accident of March 30, 1968. He sustained a comminuted fracture of the left tibia and fibula, and fractures of the first ribs, posteriorly. Leg pins were used to stabilize the leg fractures. He was discharged from the hospital April 18, 1968. On May 16, 1968, he was again hopitalized and the pins were removed. A long leg cast was applied and he was discharged the following day. After some period of follow-up by his orthopedist, he was last seen on March 12, 1969, for disability evaluation of his left lower leg. His disability was fixed at 25% possibly permanent, and he returned to his usual labor. He made no claim for lost wages.
Mrs. Taylor sustained minor facial cuts and a displacement of the nasal bones from the maxilla on the right side that realigned *693 itself into proper position. She also suffered a very slight chip at the tip of the nasal spine along with some inconsequential hairline fractures of the nose. In her back she sustained a compression fracture of the third lumbar vertebra which with the aid of some exercises healed itself. She remained in the hospital from March 30, 1968, to April 22, 1968, during which time she suffered for about one week from paralytic ileus, which is a type of constipation. By August 12, 1968, when she was last seen by an orthopedic doctor, she was symptom-free.
Mr. Taylor was awarded the sum of $12,000 plus $879.35 in special damages including $429.35 representing the excess over the amount paid him by Allstate under its Medical Payments Coverage. Mrs. Taylor was awarded the sum of $3,500 in general damages. Allstate had paid her $1,545.90 under the Medical Payments Coverage of its policy.
These figures while they seem to us to be on the lower end of the spectrum, are not so inadequate as to warrant alteration under the holdings of Gaspard v. LaMaire, 245 La. 239, 158 So.2d 149; Lomenick v. Schoeffler, 250 La. 959, 200 So. 2d 127; etc.
In making these awards, however, the trial judge stated them to be subject to a credit in favor of Allstate Insurance Company for the total of all sums it had paid the Taylors under the Special Payments portion of the policy which it issued to Mr. Taylor. He apparently based this credit on an amendment to the Uninsured Motorist Coverage portion of the policy which reads as follows:
"(d) The company shall not be obligated to pay under this coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part 2."
The "Part 2" referred to is the Medical Payments Coverage, and the trial judge obviously thought that this paragraph requires credit to be given in such cases. That is not our interpretation of the amendment but rather we consider it to be designed only to protect the insurance company from double exposure for medical payments. Thus it prevents an insured whose medical expenses have been paid under the Medical Payments Coverage from collecting for those medical expenses once again, in the event that a judgment for general damages in his favor and against the insurance company under its Uninsured Motorist Coverage falls below the policy limits of that coverage. However, in a case such as Mr. Taylor's where the award for general damages exceeds the policy limits on Uninsured Motorist Coverage, the insurance company must pay its insured the full limits of the policy, in this case $5,000 regardless of what it has paid him under the Medical Payments Coverage. We are fortified in our interpretation of this amendment by the fact that this is the only just meaning that it could have. Mr. Taylor paid two separate premiums for two separate coverages. His Uninsured Motorist Coverage cost him $5.40 per year, while his Medical Payments Coverage cost him $13.00 per year. To interpret the amendment as the company would have us do, would make the Medical Payment Coverage useless except in cases where the insured suffered physical injury as a result of his own negligence. We therefore will not allow the credit ordered by the trial judge.
It also appears that the trial judge, in setting the award for Mrs. Taylor, may have considered the fact that Allstate had paid her medical expenses in the amount of $1,545.90. Nevertheless we will not disturb his award of $3,500.00 as this is not an unduly low award for her general damages in view of the fact that she suffered no permanent injury or disability.
After finding that the sole proximate cause of the accident was the negligent *694 conduct of Curtis Lyons, Jr., the trial court should have allowed judgment in favor of Allstate Insurance Company on its third-party petition against him under its subrogation rights. Apparently his failure to do so was an inadvertent error which we will now correct.
For the reasons assigned, the judgment of the trial court in favor of plaintiffs Orie E. Taylor and Vernetta E. Taylor and against defendants Allstate Insurance Company and Curtis Brooks Lyons, Jr., is amended so as to deny Allstate Insurance Company any credit on its share of the judgment for sums it had paid to plaintiffs Mr. and Mrs. Orie Taylor under the Medical Payments Coverage of the policy it had issued to Mr. Taylor; and judgment is hereby rendered in favor of the third-party plaintiff, Allstate Insurance Company and against third-party defendant, Curtis Brooks Lyons, Jr., in the sum of $8,500 together with legal interest from date of judicial demand until paid. As thus amended and in all other particulars the judgment of the trial court is affirmed.
Amended and affirmed.