Paul Leroy LEMRICK, Appellee,

v.

GRINNELL MUTUAL REINSURANCE COMPANY, Appellant.

Barton LEMRICK, Individually, and Barton Lemrick, Executor of the Estate of Laura Lemrick, Deceased, Appellees,

v.

GRINNELL MUTUAL REINSURANCE COMPANY, Appellant.

No. 60317.

Supreme Court of Iowa.

March 22, 1978.

Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant.

Robert F. Leonard, Sidney, for appellees.

Considered by MOORE, C. J., and REES, UHLENHOPP, HARRIS, and McCOR-MICK, JJ.

**716**

UHLENHOPP, Justice.

This appeal involves several legal problems which arose in connection with uninsured motorist coverages in two automobile insurance policies.

Barton and Laura Lemrick, spouses, were "named insureds" in a policy on their Oldsmobile car, issued by Grinnell Mutual Reinsurance Company. Their son Paul Leroy Lemrick was an "insured" under that policy while occupying the Oldsmobile. Paul was also a "named insured" in a policy on his own Ford car, likewise issued by Grinnell Mutual. That policy covered him while occupying other cars, subject to certain provisions. Each policy contained an uninsured motorist clause with limits of $10,000 per person and $20,000 per accident, and the clauses were identical. Each policy also contained a medical payments clause. These were likewise identical except that the limit was $5000 per person in the Oldsmobile policy and $1000 per person in the Ford policy.

Barton, Laura, and Paul were occupants of the Oldsmobile in Idaho when an uninsured motorist negligently collided with it, causing bodily injuries to Barton and Paul and the death of Laura. The damages of Barton, Paul, and Laura's estate each exceed $10,000 exclusive of medical and burial expenses.

Under the medical payments clause in the Oldsmobile policy, Grinnell Mutual paid Barton $3,658.07, Paul $5000, and Laura's estate $2924.95. Under the corresponding clause in the Ford policy, Grinnell Mutual paid Paul $1000.

Within two years of the collision, Paul sued Grinnell Mutual under the uninsured motorist clause in the Ford policy. About two years and eight months after the collision, Barton and Laura's estate sued Grinnell Mutual under the uninsured motorist clause in the Oldsmobile policy.

The parties stipulated the facts in the two consolidated actions, and submitted the cases to the trial court on briefs. The court awarded Barton and Laura's estate $20,000 total principal and awarded Paul $10,000

principal, together with interest in each case from the date of the collision, and costs. Grinnell Mutual appealed and in this court presents four contentions.

I. *Limitations.* Grinnell Mutual first contends that the statute of limitations bars the action of Barton and Laura's estate. The question here is whether their action against Grinnell Mutual is based on the insurance policy (written contract), or the insured motorist's negligence (tort); if the former, the action is not barred as the applicable period is ten years, Code 1977, § 614.1(5), but if the latter, it is barred as the period is two years. § 614.1(2).

We recognize that some courts have held the applicable period is the one which applies to an action by the insured against the uninsured motorist (tort). The weight of authority, however, holds that the action is on contract and the longer period for contract actions applies. *Transnational Ins. Co. v. Simmons,* 19 Ariz.App. 354, 507 P.2d 693; *Hartford Accident & Indem. Co. v. Mason,* 210 So.2d 474 (Fla.App.); *Burgo v. Illinois Farmers Ins. Co.,* 8 Ill.App.3d 259, 290 N.E.2d 371; *Booth v. Fireman's Fund Ins. Co.,* 253 La. 521, 218 So.2d 580; *Detroit Auto. Inter-Insurance Exch. v. Hafendorfer,* 38 Mich.App. 709, 197 N.W.2d 155; *Selected Risks Ins. Co. v. Dierolf,* 138 N.J.Super. 287, 350 A.2d 526; *In the Matter of the Arbitration between DeLuca and Motor Vehicle Accident Indemnification Corp.,* 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482; *Schultz v. Allstate Ins. Co.,* 17 Ohio Misc. 83, 244 N.E.2d 546; *Turlay v. Farmers Ins. Exch.,* 259 Or. 612, 488 P.2d 406; *Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584; *Schleif v. Hardware Dealer's Mut. Fire Ins. Co.,* 218 Tenn. 489, 404 S.W.2d 490; *Franco v. Allstate Ins. Co.,* 505 S.W.2d 789 (Tex.); *Sahloff v. Western Cas. & Sur. Co.,* 45 Wis.2d 60, 171 N.W.2d 914; see Anno. 28 A.L.R.3d 580.

We have decided to follow the weight of authority, as we agree basically with the analysis in those decisions. True, to an extent the uninsured motorist clause puts the insured in a position he would occupy if the uninsured motorist had insurance and

the insured sued him. Yet the insured is not in fact suing the uninsured motorist, and may never sue him. Indeed, the situation may involve a hit-and-run driver who is never identified. Actually, the insured has bought and paid for a contract by an insurer to pay him if he has the misfortune to be injured by a culpable uninsured motorist or hit-and-run driver. If the insured and insurer cannot agree and the insured is compelled to sue the insurer under the uninsured motorist clause, we think in reality the action is bottomed on the policy. To be sure, the circumstances of the uninsured motorist's culpability and of the insured's damages are propositions which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's contract. The action itself appears to us to be upon the uninsured motorist clause, without which the insurer would owe nothing irrespective of the flagrancy of the uninsured motorist's culpability and the extent of the insured's damage.

Grinnell Mutual argues with some persuasiveness, however, that if its insured does not sue it under the clause until two years have elapsed, then it can no longer successfully sue the uninsured motorist by way of subrogation, as two years on the tort action against him would have run out—citing *State Farm Mut. Auto. Ins. Co. v. Wharton*, 88 Nev. 183, 495 P.2d 359, and *Citizens Ins. Co. of N. J. v. Signal Ins. Co.*, 261 Or. 294, 493 P.2d 46. Lemricks do not deny that if Grinnell Mutual pays them, it will be subrogated pro tanto to their rights against the uninsured motorist. We do not pursue this argument, however, and make no pronouncement upon it, as we think the insured's action on the uninsured motorist clause is so clearly contractual that the matter of subrogation cannot change the result. If an injustice exists regarding time limits on subrogation suits, the proper avenue would be to the legislature.

We hold that the action by Barton and Laura's estate was timely.

II. *Deduction of Medical Expenses.* Under the medical payments clause of the Oldsmobile policy, Grinnell Mutual paid Barton $3658.07 and Laura's estate $2924.95. Under that medical payments clause and under the corresponding clause in the Ford policy, Grinnell Mutual paid Paul a total of $6000. The parties stipulated that the damage of Barton, Paul, and Laura's estate is each at least $10,000 above the medical and burial expenses. The limits of the uninsured motorist clause in the Oldsmobile policy are $10,000 and $20,000, and the effective limit in the Ford policy is $10,000 since only Paul is covered. The uninsured motorist coverages in both policies contain this paragraph:

> [T]he company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Medical Payments Coverage of the policy.

Grinnell Mutual contends that under this paragraph it is entitled to deduct from the uninsured motorist insurance the medical payments it made.

■ We discussed the *validity* of paragraphs of this nature in *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321 (Iowa). The courts are divided on the validity of such clauses in states having statutes containing only provisions corresponding to our § 516A.1 of the Code. Anno. 24 A.L.R.3d 1353, 1356–1358. But our statute contains additional § 516A.2 ("duplication of insurance or other benefits"), and under that section paragraphs of this nature are valid. *McClure v. Employers Mut. Cas. Co.*, supra. See also *Westhoff v. American Interinsurance Exch.*, 250 N.W.2d 404 (Iowa); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 243 Cal.App.2d 749, 52 Cal.Rptr. 721; *Northwestern Mut. Ins. Co. v. Rhodes*, 238 Cal. App.2d 64, 47 Cal.Rptr. 467; *Stuyvesant Ins. Co. v. Johnson*, 307 So.2d 229 (Fla. App.); *Cooper v. Currigan*, 59 Mich.App. 354, 229 N.W.2d 451; *Terry v. Aetna Cas. & Sur. Co.*, 510 S.W.2d 509, 511 (Tenn.).

The question thus relates to the *applicability* of this paragraph under present facts. Two situations may exist, illustrated as fol-

lows. In the first situation an insured has $2000 medical expense and $10,000 other damage for a total of $12,000, and in the second situation an insured has $2000 medical expense and $8000 other damage for a total of $10,000. In each situation the insured has an uninsured motorist limit of $10,000 and in each the insurer pays the insured $2000 under the medical payments clause.

■ Under § 516A.2 and *McClure*, a policy paragraph can be drafted and enforced which allows the insurer to deduct $2000 medical payments from the uninsured motorist insurance in either of the two situations, so that each insured collects a total of $10,000 of insurance. But the language of the paragraph must show that such is the intent, and an ambiguity in the paragraph is of course resolved against the insurer. *Benzer v. Iowa Mut. Tornado Ins. Ass'n*, 216 N.W.2d 385 (Iowa). Moreover, the existence of a statute such as § 516A.2 does not automatically allow deduction of such insurance as medical payments. An appropriate implementing paragraph in the policy is essential. *Cannizzo v. Guarantee Ins. Co.*, 245 Cal.App.2d 70, 53 Cal.Rptr. 657.

■ Each of the present three claims is like the first situation, that is, the insured has damage of at least $10,000 above his medical expense. We may take Barton's claim as illustrative. The parties stipulated that Barton's damage was more than $10,000 over and above his medical expense, which was $3658.07. As between present parties, Barton is therefore entitled to recover at least $13,658.07 from the uninsured motorist. The quoted policy paragraph states that Grinnell Mutual is not liable under uninsured motorist coverage for that part of Barton's damage which is payable under medical payments coverage. Barton may reasonably argue that he therefore cannot recover his medical expense of $3658.07 under the uninsured motorist coverage but he still has $10,000 of other damages which he can recover under the uninsured motorist coverage. Stated another way, Barton contends he is not recovering his medical expense under the uninsured

motorist clause, he is only recovering under that clause $10,000 of other damage; therefore the quoted policy paragraph does not come into play. His position is that the quoted paragraph applies only when the medical expense makes up part of the damage an insured seeks to recover under the uninsured motorist clause.

Is such the intention of the policy paragraph, or is the intention that Barton's medical expense of $3658.07 shall be deducted from the uninsured motorist limit of $10,000, leaving $6341.93 of uninsured motorist insurance for Barton? The paragraph is not clear on this point and we therefore resolve the issue against Grinnell Mutual. In each claim before us we allocate the medical payments made to the damage over and above $10,000 leaving $10,000 of uninsured motorist insurance available. *Melson v. Illinois National Ins. Co.*, 1 Ill.App.3d 1025, 1028, 274 N.E.2d 664, 666 ("We hold that where the total proven or undisputed damages incurred by the insured are greater than the combined total of uninsured motorist and medical coverage, the crediting provision cannot apply."). See also *Wittig v. United Services Auto Ass'n*, 300 F.Supp. 679 (N.D.Ind.); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 237 So.2d 690 (La.App.); *Hutchison v. Hartford Accident & Indem. Co.*, 34 A.D.2d 1010, 312 N.Y.S.2d 789; *Lyon v. Hartford Accident & Indem. Co.*, 25 Utah 2d 311, 480 P.2d 739.

III. *"Other-Insurance" Paragraphs.* Only the Oldsmobile policy covered Barton and Laura, but both that policy and the Ford policy covered Paul. The uninsured motorist clauses of the policies each contain "other-insurance" paragraphs, having two parts. One part is an "excess" provision and the other is a "pro rata" provision. These anti-duplication paragraphs initially present no complication as to the claims of Barton and Laura's estate, but they present a problem as to Paul's claim because of his double coverage. That problem in turn spills over into the claims of Barton and Laura's estate.

In essence Grinnell Mutual contends that by virtue of the other-insurance paragraphs

in Paul's own policy, Paul must first look to the Oldsmobile uninsured motorist insurance. Hence Paul, Barton, and Laura's estate must divide the limit of $20,000 of that insurance among them, and Paul can then look to the Ford uninsured motorist insurance to make up the balance of his $10,000 maximum. The net result would be to reduce the recovery of Barton and Laura below $10,000 each from the Oldsmobile uninsured motorist insurance. Grinnell Mutual relies on *McClure v. Employers Mut. Cas. Co.,* supra, 238 N.W.2d 321 (Iowa). See also *Westhoff v. American Interinsurance Exch.,* supra, 250 N.W.2d 404 (Iowa).

The present case, however, goes a step beyond *McClure* and *Westhoff.* With respect to the present issue *McClure* dealt with stacking of uninsured motorist coverages by an insured; we held that appropriate other-insurance paragraphs may, under § 516A.2, effectively prevent recovery of an amount exceeding the highest coverage limit of any one policy. *Westhoff* reaffirmed that position.

But here we have the reverse: not an attempt by any insured to stack and collect more than $10,000, but an attempt by each of the three insureds to recover $10,000 when the bodily-injury damage of each is at least $10,000 and the uninsured motorist limits add up to $30,000. The insureds contend that Paul should receive $10,000 under the Ford policy, and that Barton and Laura's estate should receive $10,000 each under the Oldsmobile policy to its limit of $20,000. The three of them framed their two lawsuits on that basis.

■ This problem takes us into the intent of the legislature in enacting our uninsured motorist law, chapter 516A of the Code, and particularly in enacting the second section of that law, § 516A.2. We discussed the purpose of that legislation in *McClure* and in *Benzer v. Iowa Mut. Tornado Ins. Ass'n,* supra, 216 N.W.2d 385 (Iowa). Other courts have discussed the general subject at length. See Anno. 28 A.L.R.3d 551, 556 et seq. The object of § 516A.1 is to assure all insured motorists at least minimum insurance against the hazard of the culpable uninsured motorist, unless an insured in writing rejects the coverage. The object of § 516A.2 is to permit insurers to hold maximum recovery to the minimum required amount.

■ The insurer here relies on the other-insurance paragraphs to reduce the recovery of Barton and Laura's estate below $10,000 each. We think § 516A.2 does not permit other-insurance paragraphs to be used in this way; this constitutes a misuse of § 516A.2. As we stated in *McClure,* we would not uphold an other-insurance policy paragraph but for § 516A.2. The purpose of that section is not to permit an insurer to reduce claims *below* minimum required limits, but to hold claims *within* minimum required limits. The other-insurance paragraphs simply do not apply here, for no one is seeking to break through the limits. We thus agree with the insureds that Barton and Laura's estate may recover the limit of $20,000 on the Oldsmobile policy and Paul may recover $10,000 under the Ford policy. We think that result is consonant with the purpose of § 516A.1 in requiring minimum coverage and does not conflict with legislative intent in § 516A.2 in permitting insurers to limit their liability to the minimum required coverage. In the particular situation here, the insureds can rightly demand not only the minimum uninsured motorist insurance but also the entire amount of minimum uninsured motorist insurance, and the insurer cannot rightly invoke the other-insurance paragraphs under § 516A.2 to defeat that demand.

IV. *Interest.* The trial court awarded interest on the recoveries from the date of the collision. Grinnell Mutual asserts that interest should commence with the date of the judgments, or at the very earliest from the date the parties fixed the damages by stipulation.

The damages in all three claims were unliquidated. See *Kellogg v. Iowa State Traveling Men's Ass'n,* 239 Iowa 196, 29 N.W.2d 559. This is true although the policies imposed a ceiling on the amounts recoverable; before the ceiling amounts were recoverable, the claimants had to prove the

amounts of their unliquidated claims, and then those amounts had to equal or exceed the ceiling amounts.

█ The general rule is that interest runs from the time that money becomes due and payable, and in the case of unliquidated claims, including those founded on contract, this is the date they become liquidated, ordinarily the date of judgment. *Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp.*, 210 N.W.2d 532 (Iowa).

█ In Iowa, however, an exception exists to the unliquidated claim rule when the damage is complete at a particular time. Then interest runs from that time although the damage has not been fixed in a specific sum. *Bridenstine v. Iowa City Electric Ry.*, 181 Iowa 1124, 165 N.W. 435. Actions for wrongful death ordinarily come within this exception, *Wetz v. Thorpe*, 215 N.W.2d 350 (Iowa), whereas other personal injury actions ordinarily do not do so unless the damage appears to have been complete at a particular time. *Jacobson v. United States Gypsum Co.*, 150 Iowa 330, 130 N.W. 122.

█ The claim of Laura's estate appears to us to come within the exception. While the action is on contract, the measure of recovery is the measure applicable against the uninsured motorist (subject to the policy ceiling of $10,000), but under *Wetz* the damage as against the uninsured motorist was complete at Laura's death. We thus hold as the trial court did that interest runs from her death.

The record does not show, however, that the damages of Barton and Paul were complete at a particular time, and those cases fall under the general rule that interest runs from the date the amounts were determined. This was not, however, at the date of judgment, but at the prior date of the stipulation, September 10, 1976, which fixed their damages as in excess of $10,000 each. Since their ceiling was $10,000 each, the amount of their damages recoverable from Grinnell Mutual, if any was recoverable, became fixed by the stipulation. In each of their cases interest runs from September 10, 1976, and we modify their judgments accordingly.

We uphold the judgment entered by the trial court except for the modification as to interest.

MODIFIED AND AFFIRMED.

All Justices concur, except McCORMICK and HARRIS, JJ., who concur specially.

McCORMICK, Justice (concurring specially).

I concur in the opinion except for the basis of division II. In accordance with the views in my special concurrence in *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321, 330 (Iowa 1976), I would hold the medical payments cannot be deducted because they do not constitute a *duplication* of benefits within the meaning of Code § 516A.2.

HARRIS, J., concurs in this special concurrence.