GRIMES, APPELLANT, *v.* STATE AUTOMOBILE MUTUAL INS. CO., APPELLEE.

(No. 7763—Decided October 19, 1953.)

*Mr. James G. Andrews, Jr.,* for appellant.
*Messrs. Rendigs, Fry & Kiely,* for appellee.

Ross, J. This is an appeal on questions of law from a judgment of the Municipal Court of Cincinnati, entered on a verdict of a jury in favor of the defendant.

The action was on a policy of insurance covering loss due to the operation of an automobile.

The defense was cancellation of the policy before the loss occurred.

The policy provided for cancellation of the policy upon mailing of notice, and regardless of whether such notice was ever received by the insured. Such terms are binding upon an insured who seeks to recover upon a policy of insurance containing such a stipulation, and even if such stipulations appear to impose upon the insured unreasonable obligations and limitations. *Plotner* v. *Buckeye Union Casualty Co.,* 94 Ohio App., 94, 114 N. E. (2d), 629.

One of the plaintiff's assignments of error is predicated upon a portion of the general charge of the court in which it is stated:

"Now, the issue between the parties, between the plaintiff and the defendant is, under the pleadings, and under the terms of the contract, was notice of cancellation of policy mailed to the assured. That is the only issue now before you. If you find that notice of cancellation of the policy was mailed to the assured, then your verdict should be for the defendant. In the event you find that no notice of cancellation was mailed to the assured, then the policy remained in force and it would entitle the plaintiff to recover the amount stipulated.

"The burden of proof to maintain this issue is upon the plaintiff."

This instruction is manifestly erroneous, and, if there was no dispute about the evidence in regard to sending the notice of cancellation, would constitute error so much to the prejudice of plaintiff that a reversal of the judgment in favor of the defendant would be required on that ground.

As indicated, we are not concerned with evidence

pro and con as to *receipt* of the notice of cancellation by the insured.

The question is: Is there such *conclusive* evidence in the record that there can be no doubt that notice of cancellation was mailed to the insured, bearing a proper name and address?

A clause in a policy of insurance providing that the mere mailing of notice of cancellation is sufficient to cause cancellation of the policy is so harsh in its nature, and potentially contains such elements of possible disaster to an insured, that the proof of the mailing of such notice should be of a definite and specific character.

To prove the mailing of notice of cancellation, the defendant introduced the testimony of one Orlando Carter as contained in a deposition read to the jury. From this it appears that the witness holds the position of "underwriting supervisor" with the defendant; that his duties require him "to see that all risks that are submitted to the company are acceptable and * * * properly placed on the books"; that the defendant issued a policy of insurance to the plaintiff; that the original policy was issued by the Cincinnati branch office; and that the home office receives a "daily," which is "the carbon copy of the printed portion and typewritten portion of the declarations page of the policy contract."

The witness stated that exhibit I, the "daily," contained matter which was not in the policy delivered to insured, such as "an investigation of the risk" and that such "investigation revealed that the risk was not acceptable to our company." At this point in the testimony of this witness, he was asked: "What was then done?" To which question he said: "The policy was then cancelled by mailing of a direct notice of cancellation to the named insured at the address stated in the policy."

"Mr. Andrews: I will object to that answer, if the court please.

"The court: No, he testified he did it himself.

"Mr. Andrews: That he did it himself.

"The court: Yes."

There is no evidence that the witness mailed the notice of cancellation, or, in fact, who mailed it, nor is there any evidence indicating the routine by which the cancellation notice was enclosed in a properly addressed and stamped envelope and mailed. The evidence is simply that it was done.

The deposition continues:

"Q. Was this notice of cancellation prepared under your direction? A. It was.

"Q. Did you sign this notice? A. I did."

The witness testified that the cancellation became effective at 12:01 a. m. on December 23, 1951.

The witness was then asked:

"Q. After that notice was prepared and signed by you, what disposition did you make of the original? A. It was delivered in the usual course of business to the United States post office in an envelope addressed to Mr. Grimes as shown in the policy with sufficient postage and return address. On delivery of the letter we received a receipt from the post office showing it was mailed.

"Mr. Andrews: I will interpose another objection here. Another conclusion, evidently, unless he saw the man who mailed it. He says it was done in the usual course of business.

"The court: I will overrule the objection.

"Mr. Andrews: My exception."

Over the objection of plaintiff's counsel, the court admitted the "daily," an interoffice statement, of which the plaintiff had no notice and which constituted a mere self-serving declaration, upon which the company acted in cancelling the policy. An examination

of the exhibits, however, shows nothing but the declaration, a copy of the notice of cancellation which was not shown to be in the "mail matter," for which the post office issued its receipt, and the post office receipt. The sole argument in favor of such admission was that these things were done or occurred "in the regular course of business."

The amount of damage having been stipulated by counsel, the plaintiff made a motion for judgment, which was overruled.

The issuing of the policy was stipulated. The plaintiff had testified that loss thereunder occurred March 2, 1952 (the defendant claiming cancellation as of December 23, 1951); that he sent his first premium to the company ($21.80) by a check dated December 19, 1951; and that on December 14, 1951, he received a notice from the agent of the company in Cincinnati that such premium was due. The post office "receipt" is dated "Columbus, Dec. 12, 1951."

Plaintiff testified further that he received a return premium in the sum of $13.57 on March 18, 1952.

The effect of all this evidence, as far as cancellation is concerned, is that a notice of cancellation was made out, signed, and "in the regular course of business" sent to the plaintiff, and that the post office issued a receipt for "one piece of ordinary mail addressed to Mark A. Grimes, 4610 Simpson st., Cincinnati, Ohio."

Certainly, it may not be successfully asserted that such evidence is of such a conclusive character as to eliminate the prejudicial effect of a charge, placing upon plaintiff the burden of proving that a notice of cancellation was *not* mailed to him.

The judgment of the trial court is reversed, and the cause is remanded to the Municipal Court of Cincinnati for a new trial.

*Judgment reversed.*

MATTHEWS, P. J., and HILDEBRANT, J., concur.