186 So.2d 738

**UNITED STATES FIDELITY AND GUARANTY COMPANY**

v.

**Bert WILLIAMS.**

**6 Div. 111.**

Court of Appeals of Alabama.

May 17, 1966.

Spain, Gillon & Young and Ollie L. Blan, Jr., Birmingham, for appellant.

Arthur D. Shores, Birmingham, for appellee.

PRICE, Presiding Judge.

This is a suit on a policy of automobile liability insurance. The cause was tried by the court without a jury. The court found in favor of the plaintiff. Defendant appeals.

Appellant issued to appellee, Bert Williams, a liability insurance policy on November 9, 1962, for one year. The premium was $123.00. $30.00 of such amount was paid on November 9, 1962. The balance of $93.00 was paid on December 14, 1962. Williams' automobile was involved in an accident on June 16, 1963, which caused damage to the insured automobile and to another for which the insured admitted liability.

The only issue involved is whether or not the policy had been cancelled before the accident.

The cancellation clause reads:

"16. CANCELATION This policy may be canceled by the insured named in Item 1 of the declaration by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the Company by mailing to the Insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such Insured or by the Company shall be equivalent to mailing.

If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation."

The plaintiff testified he received the policy through the mail with an accompanying letter from the George L. Morris Agency dated November 12, 1962. He received no further letters or mail of any kind from the Company or the Morris Agency before the date of the accident. He reported the accident to the George L. Morris Agency by telephone and was told the policy was cancelled. He then received through the mail from the Morris Agency a memorandum advising him the policy was cancelled as of January 2, 1963, at the Company's request, together with a check for $104.80, dated June 24, 1963, marked "return premium." The check and the memorandum notice were introduced into evidence. The plaintiff stated further that he received no notice that his insurance had been cancelled prior to the date of the accident. He lived at the same

address between the time the policy was taken out and the date of his accident. He had a mail box for his house and no one else lived at that address. After the accident he received two letters at this address, advising him his policy had been cancelled. One of these letters was from the Morris Agency dated June 25, 1963, stating the policy was cancelled by appellant on January 2, 1963. The other letter was from defendant, dated June 19, 1963, giving the date of cancellation as January 3, 1963.

For the defendant, Ruth Prescott testified she had been employed by defendant for six years as an official checker and was so employed in December, 1962. As part of her duty she checked policies and sent the home office copies to agents and checked cancellation notices that may have been sent out by defendant. She was shown a copy of a cancellation notice and recognized it by her initials, the stamp she used in December, 1962, and by the date. This was a file copy of an original notice. She recalled seeing the original and sending it out the day she stamped the file. The original and the file copy were prepared by a typist at the offices of appellant and given to the witness for checking. When given to her, she would check it and send all copies out. She would attach the original to the envelope, also prepared by a typist, and put it in the mailbox. A mail boy then came by and picked up the notice from her box. The original of the cancellation notice bore the same address as the copy and she always checked the envelope against the policy address of the insured.

The witness testified when cancellation notices are sent out no request is made for the return of the policy. She did not of her own knowledge know whether the particular notice addressed to the appellee was put in the United States mail. The letter that was sent to the appellee was not registered or certified. The envelope attached to the cancellation notice bore the return address of the appellant and the notice was not returned.

On cross examination the witness testified she didn't know the reason the policy was cancelled. The underwriter usually sends a note on the policy saying, "Send out notice of cancellation," and the girls type it up and give it to her. She did not know whether there is a notice from the underwriters to cancel in the file. The girls in the back don't know to send out a notice of cancellation unless the underwriters request it, but the witness never receives the notice. She only checks the policies and the notices of cancellation.

Ronald Cary Pennington, next witness for the appellant, testified: In December of 1962, he was employed by appellant as a mail boy and supply clerk. As mail boy he opened the incoming mail each morning and distributed it to the various departments, then sent out any supply orders that came in from the agencies. In the afternoon he picked up all the outgoing mail from the various boxes in the office and put it in the proper envelopes for the different agencies, and carried it to the mail box each afternoon. He did not remember picking up a cancellation notice to appellee, but someone placed it on his desk. At this time there was a custom and practice of keeping a list of all cancellations that were mailed out and that list was kept in the regular and ordinary course of business. A book was then identified by the witness as the book in which he recorded cancellation notices. The page for December 17, 1962, in the handwriting of witness was introduced in evidence. After he received the cancellation notice he recorded in the book the name, address, the policy number and the date. The information recorded in the book was obtained from the cancellation slip. After he recorded this information in the book he put the cancellation notice in the envelope typed for it, ran it through the mailing machine, sealed it, stamped it and placed it with the outgoing mail. Each

afternoon he wrapped the mail into bundles, took it downstairs to the lobby of the building and placed it in the metal box put there by the Postoffice Department. He followed this custom on December 17, 1962.

On cross examination this witness testified he did not remember from whom he received the envelope with the cancellation order, but that someone brought it to his desk. He recorded this cancellation in a book kept for that purpose on the day he received it and sent it out. It was not sent by registered or certified mail.

The court noticed initials on the notation of cancellations and asked the witness who was T.R.M. The witness answered, "That would be Reid. He was the previous mail boy and he trained me and initialed these things." The court asked if he was just under training at that time. The witness stated, "Well, at the time I had been trained, but he was still doing this. I hadn't been on the job too long." The witness stated Reid was still with the Company. He further testified the date, insured's name and address were in his handwriting.

■ An insurer setting up cancellation as a defense on a policy has the burden of proving the policy was cancelled. Trans-America Insurance Co. v. Wilson, 262 Ala. 532, 80 So.2d 253.

In Grimes v. State Auto. Mut. Ins. Co., 95 Ohio App. 254, 118 N.E.2d 841, the court said:

"A clause in a policy of insurance providing that the mere mailing of notice of cancellation is sufficient to cause cancellation of the policy is so harsh in its nature, and potentially contains such elements of possible disaster to an insured, that the proof of the mailing of such notice should be of a definite and specific character."

■ We are of opinion the evidence was not of such definite and specific character as to show conclusively the mailing of the notice to plaintiff.

■ The copy of the cancellation notice dated December 17, 1962, is set out in the record. It appears to be typed on a printed blank under the emblem of appellant. The reason given for cancellation is "Request of Company." It is not signed by anyone. It is not shown there was an accompanying letter. We are of opinion the proof wholly failed to show the cancellation order was authorized by anyone with authority to cancel. Trans-America Insurance Co. v. Wilson, supra.

■ Under all the evidence presented the trial court was authorized to conclude that the policy had not been cancelled before the accident.

■ It is well settled that a judgment of the trial court, sitting as a jury, based on evidence given wholly or partly ore tenus, has the same force and effect as the verdict of a jury, and will not be disturbed on appeal, unless it is plainly and palpably contrary to the great weight of the evidence. Collier v. Woody, 257 Ala. 391, 59 So.2d 670.

■ We are unable to say the judgment is plainly and palpably against the great weight of the evidence. The judgment is due to be and hereby is

Affirmed.