236 So.2d 699

**EMPLOYERS NATIONAL INSURANCE COMPANY, a Corporation**

v.

**Helen S. PARKER et al.**

**7 Div. 838.**

Supreme Court of Alabama.

June 11, 1970.

Lange, Simpson, Robinson & Somerville and Reid B. Barnes, Birmingham, for appellant.

Love & Love, Talladega, for appellees.

BLOODWORTH, Justice.

On original submission, this case was assigned to another justice, and has just been reassigned to the writer.

The appeal is from a final decree in equity rendered on a bill for declaratory judgment seeking a declaration of rights under an automobile liability insurance policy.

In its final decree, the circuit court of Talladega County decreed: that an insurance policy issued by complainant Employers National Insurance Company covering respondent Billie G. Parker's Volkswagen automobile was in full force and effect on December 5, 1966, the date of an accident

involving that automobile and one driven by an uninsured motorist; that the prosecution to judgment of a cause of action by the wife of the insured, respondent Helen S. Parker, against the uninsured motorist did not work a forfeiture of the policy; and that the medical payments provision in the insurance policy did not affect the amount of the insurer's liability under the uninsured motorists provision.

Three issues are presented on this appeal: whether the trial court was palpably wrong in its conclusion that the insurer failed to prove the mailing of a notice of cancellation of the policy prior to the date of the accident; whether the insurer's denial of liability under the policy on the ground of previous cancellation rendered inoperative a policy provision requiring that the insured obtain the insurer's written "consent to sue" before prosecuting any action to judgment against the uninsured motorist; whether payments made by the insurer to the insured under the medical payments coverage are due to be deducted from the amount for which the insurer is liable to the insured under the uninsured motorists coverage. Having resolved these issues in favor of the insured for reasons which hereinafter appear, we think the decree should be affirmed.

On August 10, 1966 Employers National Insurance Company, issued two automobile liability insurance policies to Billie G. Parker of Route 1, Eastaboga, Alabama, one numbered 213003 covering a Volkswagen and one numbered 213004 covering a pick-up truck.

An automobile accident occurred on December 5, 1966, involving the Volkswagen driven by Helen S. Parker, wife of insured, and an uninsured vehicle driven by Mary Johnson. When Mrs. Parker and her passenger, Mrs. Joyce Dulaney, made claims against Employers under the uninsured motorists coverage, the latter denied coverage, contending that both policies, number 213003 and number 213004, had been cancelled on October 28, 1966, pursuant to a cancellation clause in the policy, viz:

"* * * This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. * * *"

The insured Parker admits receiving notice of cancellation for the truck policy (No. 213004) but denies receiving any notice for the Volkswagen policy (No. 213003) prior to the accident. Parker does not deny that the mailing of notice of cancellation is sufficient proof of notice, but he contends that the insurer's proof was insufficient to show that a notice of cancellation of policy number 213003 was mailed.

John Clarence Bunnell, an employee of Burnham, Luck and Hughes, Inc., a Birmingham subsidiary of Employers National Insurance Company, testified that he was authorized to cancel policies for Employers. He testified that there was a custom or procedure followed in his office as to cancellation, which consisted of: his writing a memo to his secretary, Miss Tyler, designating the policy to be cancelled; her computing the premium to be returned, typing up the notice of cancellation on a form provided by the insurer for that purpose, and, returning the original plus four carbon copies to Bunnell, who would sign the original (for the insured) and would initial two other copies (for the agent and the mortgagee, if any). Miss Tyler testified that she would then address an envelope to the insured and place the original, signed notice of cancellation in it. She would also type the name and address of the insured on a "Certificate of Mailing" form furnished by the post office and affix this form to the envelope. She would then take the envelope to the post office where, for postage, a postal employee would compare the name and address on

the envelope with that on the Certificate of Mailing affixed thereto, and would postmark both the envelope and the Certificate, tearing off and returning the latter to Miss Tyler. (The postal employee did not see the contents of the envelope.) After returning to the office, Miss Tyler would affix this Certificate of Mailing to the fourth carbon copy of the notice of cancellation to be mailed to the home office of Employers in Dallas, Texas. Although Miss Tyler said that, to the best of her recollection, she followed the customary procedure she had outlined with respect to both notices of cancellation in this case, the following exchange took place on cross-examination:

"Q You have handled literally dozens of these cancellations haven't you, prior to February 17th?

"A October 17th?

\* \* \* \* \* \*

"A Yes, sir.

"Q And you can't specifically remember either one of them, is that right?

"A No, sir."

This answer indicates (as counsel for both parties assume) a denial by Miss Tyler of any specific recollection of the notices of cancellation at issue.

Although Mr. Bunnell testified that separate envelopes and separate mailings would have been used for the two notices of cancellation allegedly sent to Parker, Employers introduced only one Certificate of Mailing bearing the name and address of the insured and postmarked October 17, 1966. That Certificate bore the number 212003 (a number which had been added by Miss Tyler to expedite filing procedure) which fails to correspond to the number of either of the two policies alleged to have been cancelled. Miss Tyler attributed this to a typographical error.

Mrs. Hazel Poole, employee of Weatherly Insurance Company of Anniston, the local agent, testified for Employers that

about October 18, 1966, she received in the office of the Weatherly Agency copies of two notices of cancellation stapled together, one for policy number 213003 and one for policy number 213004 (neither of which was signed or initialed); that handwritten notations thereon, viz: "Paid ck #666 — 12-5-66" on 213003 and "Paid 11-4-66 — ck #620" on 213004, were hers; that she mistakenly thought $13.00 was the refund due for both policies, and on November 4, 1966, she mailed a check for that amount to Billie G. Parker together with a typed letter explaining that the check was a refund for cancelled policy number 213003 (a purported copy of this letter, introduced in evidence, referred to policy number 213003, but the check, likewise introduced, referred to policy number 213004). She denied having enclosed with the check a handwritten letter explaining that the truck policy was being cancelled because heavy traffic at Bynum where Mr. Parker worked created too great a risk. She testified further that Weatherly Agency had received an account sheet on November 14, 1966 from Burnham, Luck, and Hughes (which was introduced in evidence), which indicated that both policies, 213003 and 213004, had been cancelled. She further testified that on December 5, 1966, the date of Mrs. Parker's accident, she happened to discover that Parker was due another $13.00, and mailed him a check for that amount with a handwritten note apologizing for the delay; she denied that she had received notice of the accident at that time.

The insured Billie G. Parker testified that around the middle of October he received notice that the policy covering his pick-up truck was being cancelled; that a while later he received a check for $13.00 accompanied by a handwritten note explaining that the policy on his pick-up had been cancelled because congested traffic conditions around Bynum where he worked created too great a risk of accident; and that he received no typewritten letter from Weatherly Agency referring to cancellation of policy number 213003. He testified that

he then obtained another policy of insurance for the pick-up. He further testified that on December 5, 1966, in a telephone conversation, he informed someone identifying himself as James Weatherly about the accident (which Weatherly denied); that on December 7, 1966 (two days after the accident), he received by mail a check for $13.00 along with a note apologizing for the delay in refunding the premium.

■■ This case was tried under Title 7, § 372(1) [1] and we are bound to consider only "such testimony as is relevant, material, competent, and legal * * * [but we are not] required to point out what testimony or evidence should be excluded or not considered." After a review of all the evidence we are not convinced that the decision of the trial court, which heard the evidence ore tenus, is plainly wrong or unjust. State v. City Wholesale Grocery Co., 283 Ala. 426, 218 So.2d 140 (1969). It is well settled that where the evidence is in conflict, the decision of the trial court, which heard the evidence ore tenus, is presumed correct on appeal and will not be disturbed unless plainly wrong or unjust. State v. City Wholesale Grocery Co., supra.

■ We think the trial court could find that Employers failed to satisfy the burden of proof placed upon the insurer to prove the policy was cancelled. It could find that the evidence "was not of such definite and specific character as to show conclusively the mailing of the notice to plaintiff [insured]." United States Fidelity and Guaranty Co. v. Williams, 43 Ala.App. 205, 186 So.2d 738 (1966). Such proof is required, according to the decision of the Court of Appeals, (quoting Grimes v. State Auto. Mut. Ins. Co., 95 Ohio App. 254, 118 N.E.2d 841) because:

" 'A clause in a policy of insurance providing that the mere mailing of notice of cancellation is sufficient to cause cancellation of the policy is so harsh in its nature, and potentially contains such elements of possible disaster to an insured * * *.' "

We note that the single Certificate of Mailing introduced in evidence was specific proof only of the fact that a single piece of mail was mailed to Billie G. Parker on October 17, 1966, a fact which Parker admits.

According to the testimony of the insurer's own witnesses, there is evidence of at least four errors on its part in attempting the cancellation of the policy in this case:

(1) the Certificate of Mailing for the attempted cancellation of Policy No. 213003 bore the number 212003, which is neither policy number in this case;

(2) no initials appeared on copies of notices of cancellation sent to the local agent as was the custom;

(3) the notation by the local agent on the alleged refund check for the premium for Policy No. 213003 stated it was a refund for Policy No. 213004;

(4) the failure of the local agent to mail the refund for the other policy until the date of the accident.

Undoubtedly, such a series of errors, omissions and oversights contributed to the trial court's finding that cancellation was not proven.

The insurer next contends that Helen Parker's suit to judgment against the uninsured motorist without its written consent contravened the following policy provision and worked a forfeiture of the uninsured motorist protection:

"EXCLUSIONS. This policy does not apply under Part IV [uninsured motorist protection]:

* * * * * *

(b) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative

---

1. The equity rule relating to objections to, and consideration of, evidence in equity cases.

or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor;

\*   \*   \*   \*   \*   \* "

The insurer has cited two cases as authority supporting his contention. Cotton States Mutual Insurance Company v. Torrance, 110 Ga.App. 4, 137 S.E.2d 551, and Oren v. General Accident Fire and Life Assur. Corp., 175 So.2d 581, Dist.Ct. of App.Fla. The insured has cited two cases to the effect that when an insurer denied liability on one ground, it thereby waives all other grounds of defense: Hanover Fire Ins. Co. of New York v. Salter, 35 Ala.App. 487, 49 So.2d 188, cert. den. 254 Ala. 500, 49 So.2d 193; and Rhode Island Ins. Co. of Providence, R.I. v. Holley, 226 Ala. 320, 146 So. 817.

We might well dispose of this assignment of error by simply adopting the very appropriate comment of the able trial judge in his final decree, viz:

" \*   \*   \*   The futility of requiring the Respondent, Helen Parker, to obtain consent to sue under the provisions of a policy, the existence of which Complainant denies, is obvious. \*   \*   \* "

Would it not require the "doing of a futile act" to say Mrs. Parker must seek written consent to sue from the insurer which has already denied there is any policy of insurance in force? See Alabama Department of Industrial Relations v. Anderson, 41 Ala.App. 267, 269, 128 So.2d 532 (1961). The fact is that the insurer was advised in a letter from insured's attorneys that suit was being brought and judgment would be taken. It made no reply. Thus, we need to determine the effect of the insurer's action..

Of the two cases cited by insured, we think only *Hanover Fire,* supra, is apt. In *Hanover Fire,* the Court of Appeals held that an insurer, by denying liability on a

policy of fire insurance, waived a policy provision that action should not be brought against the insurer on the policy until 30 days after filing of proof of loss. In that case suit was commenced within 30 days. Employers seems to argue, however, that until Mrs. Parker commenced her suit against the uninsured motorist, its defense of forfeiture did not arise.

We are not so persuaded. *Hanover Fire,* supra, appears to us to be authority to the contrary and to excuse the insured from performance of such a condition made for the insurer's benefit even though it arose after the repudiation of the contract by the insurer.

The Restatement of the Law of Contracts, Vol. I, § 306, pp. 451–452, answers the insurer's contention in like fashion, viz:

## "§ 306. EXCUSE OF CONDITION BY REPUDIATION OR MANIFESTATION OF INABILITY

"Where failure of a party to a contract to perform a condition or a promise is induced by a manifestation to him by the other party that he cannot or will not substantially perform his own promise or that he doubts whether though able he will do so, the duty of such other party becomes independent of performance of the condition or promise. He has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the former party, in reliance thereon, has not changed his position.

*"Comment:*

*"a.* No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition. A promisee in judging whether performance of a condition will not be followed by performance of the

promise is justified in taking the other party at his word. * * *

* * * * * *

"*Illustrations*:

"1. A, an insurance company, provides in a policy that is issued to B, that in case of loss no payment will be made unless notice is given within 60 days after loss, nor except after arbitration as provided in the policy. A loss occurs. The insurance company promptly learns of it, and for no adequate reason informs B that payment will not be made. The conditions of notice and arbitration are excused.

* * * * * *"

This doctrine is reflected in case law. In Calhoun v. State Farm Mutual Auto. Ins. Co., 254 Cal.App.2d 407, 62 Cal.Rptr. 177, 181 (1967), the insurer denied liability under an uninsured motorist provision on the ground that a non-resident motorist who collided with the insured was not an "uninsured" motorist. The facts were that the other motorist had insurance with limits of $5,000/$10,000 but these limits were less than the $10,000/$20,000 limits of the insured's policy, the minimum required under California law. The widow of the insured settled with the other motorist's insurer for his policy limits ($5,000) without obtaining written consent of the insurer, despite a provision in that policy analogous to the one here. (The California courts had previously held that being "uninsured" means carrying insurance with limits less than that required by California law.) The court held in favor of the insured in suit on the policy. The failure to obtain "consent to sue" from the insurer was held not to deprive the widow of uninsured motorist coverage. The court said:

. . . "* * * 'An insurer may not thus repudiate a policy, deny all liability thereon, and at the same time be permitted to stand on the failure to comply with a provision inserted in the policy for its benefit.' * * *"

quoting from Estrada v. Indemnity Ins. Co., 158 Cal.App.2d 129, 322 P.2d 294, 300 (1958). Notwithstanding *Calhoun*, supra, was based in part upon a California statute (which appears to follow the Restatement, supra), we think it has applicability here.

■ For the reasons stated, we hold that the policy provision providing uninsured motorist protection was not forfeited because of the failure to obtain written "consent to sue" from the insurer before prosecuting to judgment the action against the uninsured.

Neither of the two cases, Cotton States Mutual Insurance Company v. Torrance, supra, and Oren v. General Accident Fire and Life Assurance Corp., supra, cited by the insurer, appears to us to militate against the conclusion we have reached.

Though both *Oren* and *Cotton States Mutual* upheld the validity of a "consent to sue" provision (such as appears in the instant policy) neither case considered the effect of a denial by the insurer that the policy was in force on account of an alleged cancellation of the policy. (Other jurisdictions have refused to enforce such clauses, some holding the provision to be against public policy. See authorities and discussion in Gulf American Fire & Casualty Company v. Gowan, 283 Ala. 480, 484, 485, 218 So.2d 688 (1969).)

In view of the result we reach, we need not decide in this case whether this "consent to sue" clause is void and unenforceable as against public policy. Perhaps, (as we mentioned in *Gulf American*) since the older "consent to sue" clause is being replaced by the newer "conclusive judgment" clause, cases construing the former clause may prove to be rare.

The insurer's final assignment of error is in that portion of the trial court's decree which held that medical payment made to the insured under the "Expenses For Medical Services" coverage of the policy "has no effect upon the uninsured motorist coverage." The argument is made that the in-

surer will be compelled to pay the insured twice for the same expenses, since medical expenses would be included in the recovery under the uninsured motorist coverage.

However, the insurer candidly and quite commendably admits in brief:

"  *   *   *   All the cases that we have found relate to situations where either a statute or an express clause of the policy provides that medical payments once paid under the medical payment provision may be thus deducted in considering the uninsured motorist provision. These cases are shown in the annotation of 24 A.L.R.3d at page 1356, et seq. There does not appear to be any provision in Policy 213003 which contains such an express provision.  *   *   *"

Our research has disclosed only one case factually on all fours with the case at bar on this issue, Sims v. National Casualty Company, 171 So.2d 399 (District Court of Appeal of Fla.1965). In that case it was held that the insurer was not entitled to credit its medical payments against its uninsured motorist liability. The court stated:

"The two coverages of the policy which were involved here were separate and independent. For example, if the third party tort feasor had been insured or otherwise solvent and had paid the damages (including medical expenses) owed by him to the plaintiffs, that would not have relieved the plaintiffs' insurer of its obligation to pay plaintiffs' medical expenses.  *   *   *"

■ We find this reasoning compelling, particularly so in view of the fact that the declarations of the policy (in the case at bar) list separate premiums for medical payments and uninsured motorist coverage of $3.00 and $2.00 respectively. Having promised, in the event of accident, to provide medical payments coverage for a consideration of $3.00 and having promised to provide uninsured motorists coverage for an independent consideration of $2.00 and having failed to insert in its policy any

provision relating its respective obligations under these two independent covenants, Employers cannot now be heard to complain if it is held to both promises.

Therefore, having found no reversible error in the record, the decree of the trial court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.