33 So.3d 1203 (2009)
James McKINNEY
v.
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY.
1071506.
Supreme Court of Alabama.
September 30, 2009.
*1204 Michael K. Beard and Thomas M. Powell of Marsh, Rickard & Bryan, P.C., Birmingham, for appellant.
Kori L. Clement of Hare, Clement & Duck, P.C., Birmingham, for appellee.
MURDOCK, Justice.
James McKinney appeals from an order of the Tuscaloosa Circuit Court entering a summary judgment in favor of Nationwide Mutual Fire Insurance Company ("Nationwide") on McKinney's complaint seeking underinsured-motorist benefits. We reverse the judgment of the trial court.

I. Facts and Procedural History
McKinney's vehicle was involved in a collision with a vehicle driven by John Elwin Jackson in the City of Tuscaloosa. Subsequently, McKinney sued Jackson and Nationwide, McKinney's insurer, in the Tuscaloosa Circuit Court seeking recovery for alleged personal injuries and property damage sustained in the accident. Nationwide answered the complaint and submitted the following as its ninth defense: "[Nationwide] pleads offset against any potential uninsured motorist benefits due to [McKinney] and claims that it is entitled by contract to offset any uninsured motorist payments with payments made by [Nationwide] to [McKinney] for medical payments." The portion of McKinney's automobile policy providing uninsured/underinsured motorist ("UM") coverage contained a section entitled "Limits and Conditions of Payment." In that section, the policy stated, in pertinent part:
"4. Damages payable [for UM coverage] will be reduced by any amount paid or payable under:
"a) the Medical Payments coverage in this policy."
*1205 The trial court dismissed Jackson as a defendant pursuant to a stipulation of dismissal because his liability insurer had paid McKinney its full policy limit of $25,000 and Nationwide had waived any rights of subrogation against Jackson.
McKinney filed an amended complaint alleging, in addition to the claims already made, bad-faith refusal by Nationwide to pay a claim. McKinney also requested class certification and a judgment declaring that the setoff provision in the automobile insurance policies Nationwide issues in Alabama is not valid, a reformation of all potential class members' policies containing the setoff provision, an order compelling Nationwide to review all closed claims to determine if additional UM benefits should be paid in light of a favorable ruling by the trial court, and an order enjoining Nationwide from inserting such setoff provisions in its policies issued in Alabama in the future.
The trial court subsequently entered an order granting McKinney's motion for a separate trial of his bad-faith claim against Nationwide. Nationwide filed a motion for a summary judgment as to all the other claims. McKinney and Nationwide submitted to the trial court a joint stipulation of facts concerning Nationwide's motion for a summary judgment. The stipulation of facts provided as follows:
"1. Nationwide Mutual Fire Insurance Company issued a policy of automobile insurance coverage to James McKinney that afforded uninsured/underinsured motorist coverage and medical payments coverage. Said policy was in full force and effect on the date of the collision made the subject of the above-styled case.
"2. [McKinney] was charged and he paid a separate premium for medical payments coverage and the uninsured or underinsured motorist coverage.
"3. That the uninsured/underinsured motorist coverage policy limit of the Nationwide policy issued by Nationwide to Mr. McKinney is $20,000.00.
"4. That [McKinney] has no applicable uninsured/underinsured motorist coverage other than that afforded by the Nationwide policy and that only one vehicle is insured under the Nationwide policy.
"5. That on March 18, 2003, while the Nationwide policy was in full force and effect, [McKinney] sustained bodily injuries and pain and suffering as a result of a motor vehicle accident caused by the negligence of John Elwin Jackson.
"6. That the amount Mr. McKinney is legally entitled to recover from the tortfeasor, John Elwin Jackson, the underinsured motorist, is in excess of $45,000.00.
"7. That the liability insurer of John Elwin Jackson has paid [McKinney] its full policy limits of $25,000.00 and Nationwide waived any rights of subrogation against John Elwin Jackson.
"8. That [McKinney] has satisfied and complied with all of the terms and conditions as defined by the Nationwide policy.
"9. That [McKinney's] insurance policy with Nationwide expressly states that the limits for Underinsured Motorist Coverage, as stated in the Policy Declarations, are to `be reduced by any amounts paid or payable under the Medical Payments coverage in the policy.'
"10. That Nationwide has paid to [McKinney] or his physicians $2,000.00 under the medical payment coverage of the insurance policy, which constitutes the full policy limits for that coverage.
"11. That [McKinney] disputes Nationwide's right to deduct any payments made under its medical payments coverage *1206 from any amounts due under the underinsured motorist coverage.
"12. That [McKinney] contends that allowing the offset would result in [McKinney] receiving less than the minimum $20,000.00 in underinsured motorist coverage provided by his insurance policy with Nationwide and as required by law. Nationwide's contention is that even by allowing the offset, [McKinney] still receives the minimum limit of $20,000.00, but that [McKinney] cannot recover under two provisions of the policy.
"13. That Nationwide claims it has a right to deduct the payments made under its medical payments coverage from any amounts due under the underinsured motorist coverage provided by the policy."
The trial court entered an order granting Nationwide's motion for a summary judgment, stating, in pertinent part:
"After reviewing the joint stipulation of facts, and the contentions of the parties, this Court hereby finds as a matter of law that Nationwide is entitled to a judgment. The Court finds, as a matter of law, that the offset provision in the insurance policy is clear and unambiguous. The Court further finds that, because the policy language is clear and unambiguous, it must be enforced as written. The Court thus holds that Nationwide is entitled to deduct the amounts paid under the medical payments coverage afforded by the policy from any amounts owed and paid under the uninsured or underinsured motorist coverage provided by the insurance policy. The Court thus ORDERS, ADJUDGES and DECREES that defendant Nationwide is entitled to offset the uninsured and/or underinsured motorist payment by the amount previously paid under the medical payments coverage provided by the insurance policy.
"The Court notes that [McKinney] has asserted a separate bad faith claim. The court finds that claim need not be resolved at this time. However, all other claims of [McKinney] relate solely to the enforceability of the offset provision. The court finds that there is no just reason for delay in the entry of a summary judgment on those claims. Therefore, it is ORDERED, ADJUDGED AND DECREED that the aforementioned ruling on the enforceability of the offset provision is hereby made a final judgment pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure."
McKinney appeals from the summary judgment in favor Nationwide.

II. Standard of Review
Our standard of review is straightforward when, as here the facts are undisputed:
"An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 811 (Ala.2004). In addition, `[t]his court reviews de novo a trial court's interpretation of a statute, because only a question of law is presented.' Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So.2d 812, 815 (Ala.1995). Here, in reviewing the [entry] of a summary judgment when the facts are undisputed, we review de novo the trial court's interpretation of statutory language and our previous caselaw on a controlling question of law."
*1207 Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005).

III. Analysis
This will not be the first time Alabama courts have addressed the issue whether a specific provision in a UM policy[1] providing for a setoff of medical payments should be honored. In Employers National Insurance Co. v. Parker, 286 Ala. 42, 236 So.2d 699 (Ala.1970), the insurer filed a declaratory-judgment action seeking a determination of its liability for UM benefits and contendedamong other thingsthat the trial court erred in concluding that
"medical payment made to the insured under the `Expenses For Medical Services' coverage of the policy `has no effect upon the uninsured motorist coverage.' The argument is made that the insurer will be compelled to pay the insured twice for the same expenses, since medical expenses would be included in the recovery under the uninsured motorist coverage."
286 Ala. at 48-49, 236 So.2d at 704.
The Parker Court noted, however, that the insurance policy in that case did not contain a provision for the setoff of the insurer's medical payment against any payment otherwise owed by it under the UM clause of the policy. Specifically, the Court noted the insurer's concession that
"`[a]ll the cases that [it had] found [concerning this issue] relate to situations where either a statute or an express clause of the policy provides that medical payments once paid under the medical payment provision may be thus deducted in considering the uninsured motorist provision. These cases are shown in the annotation of 24 A.L.R.3d at page 1356, et seq. There does not appear to be any provision in Policy 213003 which contains such an express provision.'"
286 Ala. at 49, 236 So.2d at 705 (quoting insurer's brief). The Court concluded that because the policy in question "list[s] separate premiums for medical payments and uninsured motorist coverage," and because the insurer "failed to insert in its policy any provision relating its respective obligations under these two independent covenants, [the insurer] cannot now be heard to complain if it is held to both promises." Id. Thus, the Parker Court indicated that a clause allowing a setoff of medical payments within a UM policy would not violate the uninsured-motorist statute, § 32-7-23, Ala.Code 1975 ("the UM Act").
Relying on Parker, the Court of Civil Appeals reached the same conclusion in Russell v. Griffin, 423 So.2d 901 (Ala.Civ. App.1982). Russell concerned the issue "whether an insured can collect from its insurer under the uninsured motorist provision of an insurance policy and, at the same time, collect from the same insurer under the medical payments provision of the same policy." 423 So.2d at 902. Similar to McKinney, the insured in Russell contended that "she [was] entitled to recover actual damages against the uninsured motorist which should have included her medical expenses." 423 So.2d at 903. As in Parker, "the insurance policy in question [did] not contain a provision for offsetting or deducting payments made to an insured under the medical payments provision from any payments to be made to the insured under the uninsured motorist *1208 provision." 423 So.2d at 904. The Court of Civil Appeals reasoned:
"[A]s stated in Parker, a specific provision allowing an offset of medical payments against a recovery under the uninsured motorist provision is necessary to prevent a so-called double recovery in the instant case....
"In the absence of such a provision in the insurance policy in question, [the insured] is entitled to recover all of her damages, including medical expenses, from the uninsured tort-feasor, Griffin, and thus against [the insurer] under the uninsured motorist provision of its policy up to the policy limit.
423 So.2d at 904.
In Griffin v. Battles, 656 So.2d 1221 (Ala.Civ.App.1995), the Court of Civil Appeals addressed the viability of setoff provisions in a UM policy under a different set of circumstances. In Griffin, Mary Simon Griffin sued Dwayne Battles, an uninsured motorist, alleging that she had been involved in an automobile accident; that Battles had negligently or wantonly caused the accident; and that as a result of the accident, Griffin had suffered personal injury and sustained property damage to her automobile. The record disclosed that Griffin had received $20,500 from her insurance company, pursuant to her UM coverage, and that this information was provided to the jury during trial. The jury found for Griffin and against Battles and awarded Griffin damages of $11,105.
Battles filed a motion for a setoff, arguing that because Griffin had received $20,500 from her insurance company, he should be allowed a setoff for that amount, and, therefore, should be relieved of paying the judgment against him. The trial court granted Battles's motion for a setoff and ordered that the judgment be marked satisfied. Griffin filed a post-judgment motion objecting to the trial court's ruling, but the trial court denied her motion.
On appeal, the Court of Civil Appeals concluded that the trial court's allowance of a beneficial setoff to Battles was due to be reversed. Relying on Parker and Russell, the Court of Civil Appeals reasoned:
"An insurance company may be allowed to set-off damages when the policy contains express set-off provisions in its coverage for separate types of claims, e.g., medical payments coverage and uninsured motorist coverage .... In other words, while set-off may be claimed by Griffin's insurer by virtue of an express provision in its policy, that set-off is not available to Battles, the tort-feasor, and the trial court erred in allowing Battles the benefit of an insurance set-off available only by an express reservation."
656 So.2d at 1224-25 (citing Parker and Russell (emphasis added)).
Although it is true that "§ 32-7-23 does not provide for setoffs[, by] the same reasoning, ... § 32-7-23 does not preclude setoffs." Guess v. Allstate Ins. Co., 717 So.2d 389, 390 (Ala.Civ.App.1998). The conclusion this Court reached in Parker, and that the Court of Civil Appeals restated in Russell and Griffin, therefore, is not in conflict with the express terms of the statute. We note, however, as does McKinney in his brief to this Court, that in none of these three cases did the court actually enter a judgment allowing the requested setoff. Moreover, the concern presented here, which was not addressed in the aforesaid cases, is whether the public policy underlying the UM Act would be violated by the enforcement of a setoff provision when the insured has contracted for only the statutory minimum UM coverage. We hold today that enforcement of a setoff provision in this circumstance violates *1209 that policy when it would prevent the insured from recovering the damages he or she is "legally entitled to recover" under the UM Act.[2]
Unlike the parties in Russell and Griffin, McKinney and Nationwide agreed upon a contract of insurance that does include an express setoff provision. The provision in McKinney's UM policy states that "[d]amages payable will be reduced by any amount paid or payable under ... the Medical Payments coverage in this policy." The language is clear and unambiguous and can be literally interpreted to mean that the amount paid to McKinney for UM benefits will be reduced by all sums paid to McKinney under the medical-payments portion of the policy. It is well settled that "insurance contracts are subject to the same general rules applicable to other written contracts .... If the policy is clear and unambiguous in its terms, then there is no question of interpretation or construction." American & Foreign Ins. Co. v. Tee Jays Mfg. Co., 699 So.2d 1226, 1228 (Ala.1997).[3]
As both parties agree, however, the controlling question before the Court in this case is whether the above-quoted contractual provision, clear and unambiguous though it may be, is made invalid or unenforceable by the public policy embodied in the UM Act.
The UM Act provides, in pertinent part:
"(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom....
"(b) The term `uninsured motor vehicle' shall include, but is not limited to, motor vehicles with respect to which:
"....
"(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover."[4]
*1210 (Emphasis added.) At the time applicable here, our motor-vehicle-liability statutes set the required limits for UM coverage at a minimum of $20,000 per person, unless the coverage was specifically rejected in writing by the named insured.[5]
In LeFevre v. Westberry, 590 So.2d 154 (Ala.1991), the Court reviewed the adoption of the UM Act:
"In 1966, the Alabama Legislature joined a growing number of states in enacting legislation mandating that insurers offer uninsured motorist coverage to persons insured under automobile liability policies issued by the insurer. 1965 Ala. Acts 866 (codified at Ala.Code 1975, § 32-7-23). The policy of compensation underlying the statute was `to provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists.'"
590 So.2d at 156 (citation omitted; emphasis added). The UM Act requires that, to be entitled to UM benefits, the insured be "legally entitled to recover" damages from the owner or operator of the uninsured vehicle. As the LeFevre Court further explained:
"Uninsured motorist coverage in Alabama is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be `legally entitled' to collectthat is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled."
590 So.2d at 159 (emphasis added).
Among the cases relied upon by McKinney in his brief to this Court is State Farm Mutual Automobile Insurance Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971), in which the Court considered the question whether the liability insurer of an injured party could reduce UM coverage benefits otherwise owed to its insured by the amount of workers' compensation benefits payable to the insured by his employer. The Court observed:
"[In Safeco Insurance Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970),] we considered the validity of a provision of virtually the same import as that set out above. We held that ... an insurer cannot avoid the liability imposed by our Uninsured Motorist Act by inserting into a policy a liability limiting clause restricting an insured from recovering actual damages suffered, within the limits of a policy, where premiums have been paid for such uninsured motorist coverage, even though an insured has other similar insurance available to him."
287 Ala. at 465, 252 So.2d at 621 (emphasis added) The Cahoon Court then quoted from Safeco as follows:
"`We hold that our statute sets the minimum amount for recovery, but it does not place a limit on the total *1211 amount of recovery so long as that amount does not exceed the amount of actual loss; that where the loss exceeds the limit of one policy, the insured may proceed under other available policies; and that where the premiums have been paid for uninsured motorist coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid.'"
287 Ala. at 465, 252 So.2d at 621 (quoting Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 614, 243 So.2d 736, 742 (1970) (emphasis added)).
Consistent with the above-emphasized passages regarding the statutory purpose of providing UM coverage up to the amount of actual damages suffered by the injured party, this Court noted in Criterion Insurance Co. v. Anderson, 347 So.2d 384, 387 (Ala.1977):
"[T]he legislative purpose behind the uninsured motorist statute was to put the insured in the same position he would have been in if the tortfeasor had been a liability insurance policyholder.

"Our own Court of Civil Appeals held in Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App. 691, 695, 282 So.2d 295, 300 (1973), aff'd Higgins [291 Ala. 462, 282 So.2d 301 (1973)]:
"`... it appears to us from the plain and unambiguous wording of the statute, that it is the basic purpose of the [UM] Act, and thus the public policy of the State as to this matter, that Alabama citizens purchasing automobile liability insurance be able to obtain for an additional premium the same protection against injury or death at the hands of an uninsured motorist as they would have had if that motorist had obtained for himself the minimum liability coverage required by the Safety Responsibility Act ....'"
(some emphasis added.)
With the foregoing principles in mind, we turn now to a consideration of the opinion of the Court of Civil Appeals in Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey, 54 Ala.App. 343, 308 So.2d 255 (Ala.Civ.App.1975). Humphrey addressed the issue of a medical-setoff provision in more detail than did the three cases discussed at the outset of this analysisParker, Russell, and Griffin:
"In [Alabama Farm Bureau Casualty Insurance Company v.] Clem, [49 Ala. App. 457, 273 So.2d 218 (Ala.Civ.App. 1973),] we pointed out that the Alabama uninsured motorist statute contained no provision as to rights of subrogation, as do the statutes in some other states. We further pointed out the principle enunciated by our Supreme Court in other cases. That principle is, the uninsured motorist statute is to be construed so as to assure a person injured by an uninsured motorist that he will be able to recover, from whatever source available, up to the total amount of his damages. The insurer will not be permitted to insert any provision in its policy limiting such recovery by the insured. Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 [(1970)]; State Farm Mutual Auto. Ins. Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 [(1971)]; Employers Liability Assurance Corp., Ltd. v. Jackson, 289 Ala. 673, 270 So.2d 806 [(1974)]; Great Central Insurance Co. v. Edge, [292] Ala. [613], 298 So.2d 607 [(1974)]."
54 Ala.App. at 346, 308 So.2d at 257. The court then reasoned that a subrogation clause in the policy at issue, "when applied to settlement with or recovery from tort-feasors *1212 other than the uninsured motorist is invalid and contrary to the intent of the uninsured motorist statute." 54 Ala.App. at 346-47, 308 So.2d at 257-58. Nonetheless, the court pointed out, "an insured may not recover if he has been fully compensated for his damages by any tort-feasor." 54 Ala.App. at 347, 308 So.2d at 258.
The Humphrey court then proceeded to consider whether a payment to the insured under a medical-benefits clause could be set off against the amount otherwise owed by the insurer under the UM provision of the policy in a case in which (a) the only damages the insured was "legally entitled to recover" from the tortfeasor were punitive damages, given that the claim asserted was a wrongful-death claim and (b) the jury had set those damages at $26,500, an amount less than the total of the $17,500 the insured already had received in a pro tanto settlement (with a tortfeasor other than the uninsured motorist) and the insured's $10,000 UM coverage.[6] Because the insured's medical expenses could not have been part of the damages to which the jury had determined the insured to be "legally entitled," the court ultimately concluded that allowing a setoff of the medical benefits paid by the insurer would be improper. It first explained that, as a general rule, the ability to recover both medical benefits and UM benefits depends on the amount of the actual damages the insured is entitled to recover:
"The medical payment coverage and the uninsured motorist coverage are separate in the policy. Each requires a payment of premium. It seems that if actual damages of the policyholder exceed[] the maximum of the uninsured motorist coverage, the insured has access to the medical payments coverage, if available under the facts. If actual damages are paid within the uninsured motorist coverage, there is no right to payment under the medical payment coverage. Defendant appears to agree with this view in its argument in brief.
"In this case, an action for wrongful death, actual damages were determined to be $26,500.00, $9,000.00 of which was due from defendant. Such damages were punitive and did not include medical expenses covered by the medical payment provision of the policy. To allow set-off of medical payment in this case would limit the right of recovery of actual damages under the uninsured motorist coverage. Such is contrary to the principle stated by Safeco v. Jones, supra, Clem, supra, and other cases cited hereinabove."
54 Ala.App. at 347, 308 So.2d at 258 (emphasis added).
Thus, despite the fact that the total damages to which the insured was "legally entitled" did not exceed the combined amount of the insured's recovery from one of the tortfeasors and the additional amount of the UM benefits to be paid to the insured, the particular nature of the damages at issue meant that the Humphrey court's decision not to enforce the medical-benefit setoff (a) did not violate the above-stated principles regarding placing the insured in the same, but no better, position than if the uninsured tortfeasor against whom the judgment was entered had been insured at the statutory minimum and (b) actually was necessary to afford to the insured the full application of its UM coverage to the damages the insured was legally entitled to recover, as determined in that judgment.
*1213 The present case differs from Humphrey in two respects: On the one hand, this is not a wrongful-death case; the expenses covered by the medical-benefit clause also are part of the damages the insured is "legally entitled to recover." They therefore fall within the UM coverage and logically must be considered if the objective is to put the insured in the same, but no better, position than if the tortfeasor had held the minimum coverage required by the UM Act. On the other hand, we know from the parties' stipulations enough about the amount of the damages the insured is legally entitled to recover to know that those damages do in fact exceed the total of what the insured already has recovered from the tortfeasor and the amount of coverage available under the UM provision. Because we know this, we can conclude that the trial court erred in allowing a full setoff of the medical benefits payment against the UM coverage.
Nonetheless, as noted, the expenses covered by the medical-benefit clause are part of the damages the insured is "legally entitled to recover" and, therefore, unlike in Humphrey, logically must be considered if the objective is to put the insured in the same, but no better, position than if the tortfeasor had been a minimum-liability-insurance policyholder. What we do not know in this respect is whether the total amount of the damages the insured is legally entitled to recover exceeds the combined total of the amount already recovered by McKinney from the tortfeasor and from the insurer under the medical-benefits clause, and the amount of UM coverage available under the policy. If they do, then no setoff is appropriate. To the extent they fall short of this amount, enforcement of the contractually agreed upon setoff at issue would not conflict with the purpose sought to be achieved by our legislature in prescribing certain minimum amounts of UM coverage that by law must be available to "recompense" an insured his or her actual damages, but no more.
Our understanding of the legislature's intent in enacting the UM Act is in line with the understanding of courts in other states as to the intent of their legislatures in enacting comparable, if not identical, UM statutes. In Melson v. Illinois National Insurance Co., 1 Ill.App.3d 1025, 274 N.E.2d 664 (1971), the Illinois court not only addressed the law in its own state, but also explained the holdings of courts in three other statesLouisiana, New York and North Dakota:
"Although no decision involving the interpretation of the provision has been cited, our research has revealed three cases interpreting the identical provision appearing in plaintiff's policy. See, Taylor v. State Farm Mutual Automobile Ins. Co., 237 So.2d 690 (La.App.1970); Hutchison v. Hartford Accident & Indemnity Co., 34 A.D.2d 1010, 312 N.Y.S.2d 789 (1970); Wittig v. United Services Automobile Association, 300 F.Supp. 679 (N.D.Ind.1969). These cases based their interpretations upon the rationale that:
"`... (the medical payment crediting provision is) designed only to protect the insurance company from double exposure for medical payments. Thus it prevents an insured whose medical expenses have been paid under the Medical Payments Coverage from collecting for those medical expenses once again....' (Taylor v. State Farm Mutual Automobile Ins. Co., supra, 237 So.2d at 693).
"The defendant in the case at bar does not disagree with this rationale since it has admitted that the provision is designed so that `medical expenses as an item of damages for bodily injury shall *1214 not be paid twice by the insurance company.'
"....
"The defendant has admitted that the plaintiff's damages are in excess of $12,000.00 and the trial judge found his damages to be greatly in excess of that amount. Since the plaintiff has been compensated for $2,000.00 of medical expenses he still has remaining a minimum of $10,000.00 in damages which have not been paid as medical expenses and are not payable as such since he has already exhausted his medical payment coverage. Therefore, regardless if the remaining $10,000.00 of his admitted damages is regarded as medical expenses, lost wages, damages for pain, suffering or for permanent disability, it is clear that double payment will not occur if the limit of uninsured motorists coverage is paid.
"It follows that double payment can exist, and that therefore the deduction provision applies, only if the total amount of proven or undisputed damages does not exceed the total of uninsured motorists coverage and medical expense coverage. Indeed, this is the interpretation which Taylor, Wittig and Hutchison have all placed upon the provision.

"We hold that where the total proven or undisputed damages incurred by the insured are greater than the combined total of uninsured motorist and medical coverage, the crediting provision cannot apply. Since the defendant admits that the plaintiff's damages are in excess of $12,000.00 we affirm the summary judgment in the amount of $10,000.00."
1 Ill.App.3d at 1027-28, 274 N.E.2d at 666 (emphasis added).
In State Farm Mutual Automobile Insurance Co. v. Harper, 125 Ga.App. 696, 188 S.E.2d 813 (1972), the Court of Appeals of Georgia also expressly differentiated between the enforceability of a provision for the setoff of medical-benefits payments when the insured's total damages exceed the amounts it could recover under its UM and medical coverage and when it does not, distinguishing an earlier case that fell in the former category:
"In this case the trial judge did not give credit for the $1,000 the defendant paid each plaintiff under the provisions for medical payment but only credited the two payments made under the uninsured motorist provision totaling $18,000. As a result the principal amount of the judgment was $14,500 allowing the plaintiffs to recover $34,500 on the two policies when their judgment on which recovery was predicated totaled $32,500. The policies contain language providing that the amount payable as uninsured motorists coverage be reduced by any sums paid under medical coverage.
"In Phillips v. State Farm Mut. Auto. Ins. Co., [437 F.2d 365 (5th Cir.1971)], the federal court held that sums paid under medical provisions of a policy could not serve to reduce the amount owed as uninsured motorist coverage. In that case plaintiff had damages in excess of the $10,000 coverage for uninsured motorists. We think the result there reached was correct.
"However, this is not the situation in the instant case. Here under the two policies, the plaintiffs were able to recover the full amounts for their claims, to wit, $12,500 and $20,000 respectively....
"....
"Insofar as the judgment herein entered allowed the plaintiff recovery in excess of the actual damages, it is error and must be reversed."
*1215 125 Ga.App. at 699-700, 188 S.E.2d at 816-17. See also Lemrick v. Grinnell Mut. Reinsurance Co., 263 N.W.2d 714 (Iowa 1978) (disallowing a setoff because the total proven or undisputed damages incurred by the insured were greater than the combined total of UM and medical coverage and quoting with approval from Melson, 1 Ill.App.3d at 1028, 274 N.E.2d at 666); Lyon v. Hartford Acc. & Indem. Co., 25 Utah 2d 311, 317, 480 P.2d 739, 744 (1971) ("In the instant action, plaintiff's damages exceeded the policy limits under the uninsured motorist coverage, and Hartford was not subject to double exposure for plaintiff's medical expenses. Under such circumstances, Hartford was not entitled to offset the medical payments against the uninsured motorist coverage.") (Overruled on other grounds by Beck v. Farmers Ins. Exchange, 701 P.2d 795 (Utah 1985)); Tolson v. Allstate Ins. Co., 108 Wash.App. 495, 32 P.3d 289 (2001).
Based on the foregoing, we conclude that where an insured has contracted only for the statutory minimum UM coverage and the total damages the insured are legally entitled to recover exceed the total of any payment by the tortfeasor's insurer, the insured's UM coverage, and any medical benefit also paid by the liability insurer to the insured, a policy provision allowing the insurer to set off any medical-benefit payments against the UM coverage is unenforceable as a matter of public policy. Accordingly, the judgment of the trial court is reversed. This cause is remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
COBB, C.J., and LYONS and WOODALL, JJ., concur in the result.
WOODALL, Justice (concurring in the result).
The minimum limit of uninsured-motorist ("UM") coverage required by § 32-7-23, Ala.Code 1975, at the time of McKinney's accident, was $20,000, and that is the amount of James McKinney's coverage. McKinney and his insurer, Nationwide Mutual Fire Insurance Company, agree that McKinney is legally entitled to recover at least $45,000 from the tortfeasor, and that McKinney has already received $25,000, the limit of the tortfeasor's liability coverage. Consequently, McKinney is entitled to recover the full amount of the UM coverage afforded by his policy.
Nationwide argues that McKinney's recovery under the UM coverage must be reduced by the $2,000 it paid him under his medical-payments coverage. However, § 32-7-23 "sets a minimum amount for recovery, ... and ... where the premiums have been paid for [UM] coverage, we cannot permit an insurer to avoid its statutorily imposed liability by its insertion into the policy of a liability limiting clause which restricts the insured from receiving that coverage for which the premium has been paid." Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 614, 243 So.2d 736, 742 (1970) (emphasis added). In other words, "an insurer cannot avoid the liability imposed by our Uninsured Motorist Act by inserting into a policy a liability limiting clause restricting an insured from recovering actual damages suffered, within the limits of the policy, where premiums have been paid for [UM] coverage, even though an insured has other similar insurance available to him." State Farm Mut. Auto. Ins. Co. v. Cahoon, 287 Ala. 462, 466, 252 So.2d 619, 621 (1971) (emphasis added). See also Preferred Risk Mut. Ins. Co. v. Holmes, 287 Ala. 251, 251 So.2d 213 (1971). Thus, it is "rather firmly established ... that the law of this state with respect to *1216 [UM] coverage precludes an insurer from collecting a premium for certain coverage, then taking that coverage away by a limiting clause, under the rationale that a contrary holding would be in violation of the [UM] statute." Great Central Ins. Co. v. Edge, 292 Ala. 613, 616, 298 So.2d 607, 609 (1974).
Recent cases make it clear that policy terms that are more restrictive than § 32-7-23 are void as against public policy and, thus, unenforceable. See, e.g., Walker v. GuideOne Speciality Mut. Ins. Co., 834 So.2d 769, 772 (Ala.2002). Consequently, Nationwide may not reduce the amount it owes McKinney under his UM coverage by the amount it paid to him under the separate medical-payments coverage.
For these reasons, I concur only in the result.
COBB, C.J., and LYONS, J., concur.
NOTES
[1] As defined in McKinney's policy, and as used in this opinion, the terms "UM," "uninsured motorist" and "uninsured motor vehicle" refer to both uninsured and underinsured motorists and motor vehicles. This is also consistent with the statutory provision addressing underinsured-motorist coverage. See note infra 4.
[2] In yet another case, Alabama Farm Bureau Mutual Casualty Insurance Co. v. Humphrey, 54 Ala.App. 343, 308 So.2d 255 (Ala.Civ.App. 1975), the Court of Civil Appeals addressed the issue of a medical-benefits setoff provision in even more depth. Humphrey is discussed infra.
[3] In essence, the parties have contracted for the inclusion in the policy of a medical benefit that is payable to cover incurred medical expenses without awaiting a determination whether the tortfeasor is uninsured and without awaiting a determination of the final amount the insured is "legally entitled to recover" from the tortfeasor. Also, benefits received under the medical-benefit clause may be retained even if it ultimately is determined that the tortfeasor is not uninsured.
[4] As the Court of Civil Appeals explained in Guess v. Allstate, 717 So.2d at 390:

"In 1984 our legislature amended the term `uninsured motor vehicle' to include `underinsured' motor vehicle. See § 32-7-23(b)(4). Underinsured motorist coverage applies `where the negligent or wanton tortfeasor has some liability insurance but does not have enough to fully compensate the victims of his negligence or wantonness.' Hardy v. Progressive Ins. Co., 531 So.2d 885, 887 (Ala. 1988).
(Emphasis added.)
[5] Section 32-7-23 sets the required dollar amounts of coverage by reference to § 37-2-6(c), which at the time of McKinney's accident set the minimum coverage at $20,000; § 37-2-6(c) was amended in 2008 to provide for coverage of "not less than twenty-five thousand dollars ($25,000) because of bodily injury to or death to one person in any one accident." Act No. 2008-393, § 1, Ala. Acts 2008.
[6] In the setoff cases of LeFevre, Cahoon, and Safeco discussed above, the total damages suffered by the insured exceeded the combined total of the UM coverage and the coverage for which the insurer sought a setoff.